Lee & Dolen, Respondents vs. Ashbrook, Appellant.

LEE & DOLEN, RESPONDENTS, vs. ASHBROOK, APPELLANT.

1. If a party to a building contract, voluntarily abandons it, before completion, he is nevertheless entitled to recover for his work and materials, at cost prices, if the other party has received and enjoyed the benefit thereof; but in such case, the damages sustained by the other party, from the non-performance of the contract, must be deducted from the value of the work and materials. If the damages equal, or exceed the value of the work and materials, nothing is recoverable ; if they be less, the amount recoverable is the difference between the contract prices of the work and materials, and the damages resulting from the non-performance of the contract.   (Helm vs. Wilson, 4 Mo. Rep., 41 )

2. Though the verdict of a jury may not be entirely satisfactory to the supreme court, it will not, for such a cause, be set aside.

## APPEAL from St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

Respondents, Lee & Dolen, instituted suit against appellant in the St. Louis court of common pleas, at the September term, 1849, by petition, which set forth, in substance, that they, with appellant, in January 1849 entered into a contract whereby respondents were to do the excavation for a house to be built by appellant in the city of St. Louis, for which appellant was to pay them fourteen cents a cubic yard, to be paid as done; also, they were to build the

Lee & Dolen, Respondents vs. Ashbrook, Appellant.

walls of said house, intended for a pork-house, and al-o the walls of a smoke-house at the price of one $1 5-8 a perch, to be measured as usual, two-thirds of which was to be paid as done, and the balance, when all completed, by appellant's note—that they entered upon the performance of this contract and did all the excavating, for which appellant has not paid—that they proceeded to build said walls, and continued so to do till they had built eight hundred perches, when appellant required them to cease their work, declaring that they were not doing it according to the contract; whereupon, they demanded to see the contract, which defendant refused, but required them to stop their work, declaring, that if they proceeded further, he would have it pulled down. Whereupon, they did stop, contending, however, that they did do their work according to the contract, and were willing and offered to go on and complete it. They then demanded of appellant pay for what they had done, which was refused, and they aver that defendant did not pay for the walls as they were built, as provided for in the contract; that defendant now keeps and enjoys said excavation and walls, done and built by respondents; that because they kept their part of the contract and appellant prevented their completing it, they may now claim for their work what it is reasonably worth, independent of the contract prices. What they did, and its reasonable price was as follows, to-wit:

| | |
|---|---:|
| 1500 cubic yards grading and 5600 feet of excavating at 14 cents per yard, | $910 00 |
| 800 perches stone work at $1 3-4 per perch, | 1400 00 |
| Total, | $2,310 00 |

That they received of appellant $1,462; the balance, $848, they ask judgment for.

They further state that the contract was in writing, and was put into the hands of Mr. Cunningham, who was superintendent of the work, appellant assuring them that they might examine it whenever they wished, and therefore they did not keep a copy nor annex it to their petition, and as the sight of it was always refused them, they cannot state its terms precisely,

Appellant's answer is in substance as follows:

That appellant and respondents did, on the 10th February, 1849, enter into a contract, whereby the latter were to do the grading and excavating and build the walls of two warehouses, a lard rending house, two smoke houses, the foundations of a hanging house and a slaughtering house; all of which were to be used in the business of slaughtering hogs, pork packing and lard making—that the contract was in writing and put into the hands of E. L. Cunningham, by the consent of both parties, subject to the inspection of either; which contract was the only one ever made between said parties, was filed with said answer. Its terms are briefly as follows:

Respondents were to build the walls of two smoke houses, sixty-five feet front by one hundred and twenty feet deep, two stories high with a cellar; also, a lard rending house and two smoke houses with cellars and three stories high, all of stone; also, the foundation walls of a frame hanging house, and of a frame slaughtering house; also, to do all the cellar digging and excavating necessary to be done. The contract particularly specifies the thickness of the walls, the location of the different buildings, their doors, windows, &c.

Respondents were to build the walls, and furnish the materials therefor, for $1 62½ per perch, and do the excavating for fourteen cents per cubic yard. All the walls for all the buildings, except for the smoke house were to be done by July 1st, 1849, and for the smoke houses, by the 15th September, 1849, under a penalty of $10 for each day of delay beyond said times; for the excavating, payment was to be made as it progressed, for the stone work two-thirds as it progressed, and for the remaining third of the price, appellant was, at the completion of the work to give his note at four months. The contract closes in these words: "It is further understood that the workmanship and materials for said building are to be under the immediate direction of E. L. Cunningham. The said Cunningham direct the amount of money to be paid to Lee & Dolen."

Lee & Dolen, Respondents vs. Ashbrook, Appellant.

The answer further states, that appellant never required respondents to stop work, but wished them to complete it; that they proceeded slowly with their work and put in bad materials, and that on the 16th of June, Cunningham objected to some wall then being constructed by them, and told them that he could not receive it, and that they must take it down and do it over, according to the contract; that they refused so to do, abandoned the work. Appellant notified them that if they abandoned the work, he should go on with it at their expense; that respondents notwithstanding left, and therefore appellant employed hands and obtained materials and went on with the work; that labor and materials had risen; that the buildings were not yet completed, and that the delay beyond the time the respondents were to have the work done was to his damage $1000; that by reason of the increased prices of labor and materials the cost to him in completing the work embraced in the contract, over that under the contract prices will be very great, but, as all is not yet done, how much over is unknown; that the damage to him, however, by reason of respondents' abandoning the work, is, at least, $1,500; that he has ever been ready and willing to comply with his part of the contract, and asks judgment that his damages be allowed against respondents' claim.

Respondents replied, denying all indebtedness to appellant; (the case was tried at the return term and a verdict given for plaintiffs, which was set aside on defendant's motion.) On the trial the respondents introduced the following testimony:

1st. The contract, filed with appellant's answer. Upon the points assigned by respondents in their petition as breaches of the contract by appellant, and justification for their abandoning the work, to-wit: Refusal to pay, as required by the contract; refusing to let them see the contract, or have a copy, and stopping their going on with the work; they by their witnesses gave in substance the following testimony:

As to refusal to pay them, they show that about ten days or two weeks before they quit the work, Cunningham objected to the manner in which certain walls of two cellar piers were made, in that enough mortar was not used, and that which was used had not enough lime in it, and directed that this work (some two or three perches) should be taken down and done over. Lee, (who was a stone-mason and superintended the doing of the stone work, Dolen not being a mason, nor present at the work) refused to do it. Cunningham told him he should pay him no more money till he did. Saturday (which was pay day) came, and Lee asked for money, which was refused, on the ground that said work was not done over as directed. A few days afterwards, Lee did it. There is no evidence of any other refusal to pay. As to this work, their witness, Ryon, who helped to build it, said that there was not enough mortar in the objected work, and their witness, Dempsey, who did the bad work, says, more might have been put in the first time, and that he put in more the second time, but that he did not know that more was needed. Ryan says that there was a rain which might have washed it out. For appellant it is shown by Cunningham, that the rain was after the objection, and by three witnesses on the spot, Cunningham, White and Mason in Lee & Dolen's employment, and Barber, a carpenter on the building. It was directly proved that the work objected to lacked mortar and was carelessly done. Cunningham testified that except in this instance, he always paid as asked, for both before and after this, work had been done right; that neither party measured the work as it was progressing, and when L. & D. left, not near all the excavating was done, and of all this testimony of C.'s, none is made or attempted to the contrary.

As to the refusal of the sight of the contract, or the giving of a copy, respondents give evidence of but one refusal before they left; that was on this occasion, to-wit: On the morning of the day they left, and before Lee had come to the building, Cunningham came to where the masons were building up three piers fronting on Broadway, which they had got up from one and a half to two feet, and on looking at the work told the masons that the work, as done, and as they were doing it, would not answer, and would have to be taken down and done over, because the stone were not sufficiently bound together, in this, that large stones were put in on the outside and small ones on the inside. When Lee came, and was told this, he said he was doing it according to the contract, and demanded sight of it. What reply was

Lee & Dolen, Respondent vs. Ashbrook, Appellant.

made by Cunningham is not shown, but Lee went away telling his men to keep on working, and about 10 o'clock returned and told them he could not do the work to please, and they all left. This is the whole strength of their testimony, as to the refusal of the sight of the contract.

Appellant proved as follows, on this head: Cunningham testified that on the said occasion, he did refuse to show Lee the contract; the reason was, he was afraid Lee would not deliver it back to him. Lee had also before said that he knew the contract perfectly well; the appellant was not knowing to the refusal nor authorized it; the contract was put into his hands by Lee, at the instance of appellant, when he objected to the work on the cellar piers, he then refused to 'et Lee see the contract. Respondent gave further evidence of a refusal by C. to see the contract about a week after they had left. This testimony was objected to, because so long after they had left, and appellant by reason of their leaving had taken the work into his own hands, hired masons, got materials, &c. As to the stopping of respondents from completing the work, their evidence is what has been partly stated under the last head, of the acts of Cunningham; on the morning they left, about the taking down and doing over the three piers on Broadway. Their witness, Ryan, their only witness on this head, and who was one of the masons who did the work for Lee, says that the work might have been done better, but don't know that it ought to have been—that after Lee left, Cunningham had them taken down and built over, more solid. This was respondent's evidence.

On the part of appellant, Cunningham stated that he made objections to the piers on the morning, that the stone (large and small) were not enough mixed to make a strong wall, because the large were put on the outside and the small on the inside, making from eight to ten joints with mortar on the inside to three on the outside; by reason of which, the wall would settle irregularly. He said, therefore, that it must be done over, which Lee refused to do, and said he would leave. C. urged him to go on with the work and said if he did not, appellant would act at his expense, but Lee refused to do so. On the same day, C. saw Dolen twice and told him what had occurred, and advised him to go and see Lee about it, or he would go on with the work at their expense. Dolen replied that he had nothing to do with it. Lee had before said that Dolen was not his partner, and afterwards Dolen said he had not signed the contract, but Lee for him.

After this, the next day, Lee not returning to the work, appellant hired five men who went to work on the building, and he increased the number as he could, and carried on the work as fast as he could. He had the objectionable piece taken down and rebuilt as he directed Lee to do it, the day after Lee left. As rebuilt, they were stronger, and none too strong. Walls built with the large and small stones properly mixed, and so that the joints and mortars both on the inside and outside are in equal quantity, are better and stronger.

Respondents further gave evidence of a conversation between Dolen and Cunningham about a week after Lee left, in which Dolen demanded sight of, or a copy of the contract, offering to go back to the work if he could see the contract, which C. refused, and also then refused to let respondents resume the work, to which evidence appellants objected, because this was after they had left the work, and appellant had taken it upon his own hands. The court overruled the objection and appellant duly excepted.

It was proved that labor and materials had risen since the spring—that the cholera and great fire had caused it. Labor had risen 25 cents a day. C. testified that it had cost the appellant to complete the work, after respondents had left, $2,312 60 more than it would have cost him, had respondents completed it under the contract prices—that at the time they left the work, they had done 725 perches of stone work, and 5,681 yards of excavation—that in completing the work after they had left, he urged it as fast as he could, and got labor and materials as cheap as he could—that all the stone work that he objected to and required to be done over again, of all the 725 p., did [not exceed 10 perches. Plaintiff proved by several witnesses that the style of the work by C. after Lee left, was different from that mentioned in the contract, and three times more costly. Defendant introduced a witness, who stated that after the first trial, and before the second, C. had cautioned plaintiffs' servants against

Lee & Dolen, Respondents vs. Ashbrook, Appellant.

putting much weight on the S. E. corner of the building, on account of the weakness of the wall. On cross-examination it appeared that the joists ran N. and S. It appeared that C., when he went on with the building, after Lee left, used the materials belonging to the plaintiffs then on the ground. ]

, To the above, in brackets, the appellants objected for the following reasons:

1. There is no evidence going to show that the work done after Lee left, was different from that mentioned in the contract and three times more costly. The contract does not state the specific character or style of the work, but provides as aforesaid that it should be under the direction of Cunningham. The work was all rubble work except the jambs of the doors on Broadway. They were scubbled or squared, and Bennett (the witness for Lee and Dolen.) says this was worth three times the cost of rubble work; but C. proves that Lee & Dolen were to scubble the door jambs. Besides, Lee & Dolen never did any, nor was there ever any dispute with them about them, and they altogether amounted only to 14 perches.

2. The same evidence that shows that materials of Lee & Dolen were used in the building after Lee & Dolen left, also shows that Ashbrook paid for them.

On behalf of appellant, the following instructions were asked, to-wit:

1. The jury ought to find for defendant unless the plaintiffs have shown by the evidence a performance, on their part of what they agreed to do in the contract read in evidence, or a legal excuse for not doing it.

2. Under the contract read in evidence, it was the duty of the plaintiffs to so construct the walls and furnish such materials therefor, as should be directed by E. L. Cunningham, and any failure on the part of plaintiffs to conform to his directions in either of these respects, would be an illegal breach of the contract on the plaintiffs, unless the jury believed from the evidence that such directions required so much better materials and workmanship than the uses for which the walls were to be made, as to show a design of abuse of power, or to harrass, and this the plaintiffs must show from the evidence.

3. And it would be no legal excuse for the plaintiffs not performing said contract, that they were not paid for their work as it progressed; unless the plaintiffs prove a refusal upon a demand therefor, accompanied by a statement of the amount of work done; nor would such a demand and refusal be such an excuse, if the jury believe from the evidence that such refusal was made by reason of the plaintiffs not conforming to such directions as aforesaid.

4. Nor would it be a legal excuse for plaintiffs not performing their part of said contract that Cunningham did refuse to let Lee see the contract, unless the plaintiffs prove to the satisfaction of the jury, from the evidence, that such refusal prevented their conforming to such directions as aforesaid, nor even then, if the jury believe from the evidence that C. held the contract by agreement of both plaintiffs and defendant, unless the plaintiffs prove from the evidence, that such refusal was made by the direction of the defendant.

5. Nor were the requirements of C. to take down or do over those portions of the walls which, upon such requirements plaintiffs did take down or do over, nor any refusal to pay them money till they had done so, make any legal excuse for not performing the contract.

6. If the jury believed from the evidence that the plaintiffs did offer to come back and complete the work after they had quit it, and that Cunningham refused, such offer and refusal can be of no benefit to the plaintiffs in this suit.

7. No conduct on the part of Cunningham towards the plaintiffs would be a legal excuse for their not performing their part of the contract; unless such conduct was such as prevented the plaintiffs from performing, and known and approved by the defendant, which the jury cannot presume, but the plaintiffs must prove.

8. If the jury believe from the evidence that the plaintiffs quit performing their contract without legal excuse, then they should allow the defendant, as damages therefor, whatever the jury believe from the evidence it cost him on the proper completing of the work covered by the contract, more than it would have cost him had the plaintiffs completed the work at the prices named in this contract and in this way, if such greater cost was equal to or greater than the balance due the plaintiffs for what they did do, they should find for the defendant;

if less, then they should find for the plaintiffs, only the difference between such balance due plaintiffs and such greater cost.

All of which were refused, and defendant excepted.

The court then, on its own motion gave the following:

1 If the jury believe from the evidence that the plaintiffs were prevented by defendant or his agents, from performing their contract within the time stipulated, or that such unreasonable obstacles to its execution were interposed by the defendant or his agent, as to impose unnecessary expense and difficulties on the plaintiffs in the construction of the work proper for the building they had contracted to erect for defendant, they will find for plaintiffs and assess the damages at the value of the work and materials furnished by them.

2. If the jury believe from the evidence that plaintiffs were not prevented from completing the work, by the defendant or his agent, and that they voluntarily abandoned the contract before it was performed, they are entitled to recover for their work and materials at cost prices, provided the defendant received and enjoyed the benefit thereof; but in such case they will deduct from the value of the work and materials, the damages sustained by defendant from the non-performance of the contract by the plaintiffs, and if the damages equal or exceed the value of the work and materials, they will find for the defendant; otherwise, they will find for the plaintiffs, and assess the damages at the difference between the contract prices for the work and materials and the damages sustained by defendant.

4. By the contract between the parties to this suit, Cunningham had a right to give any reasonable and proper directions with regard to the workmanship and materials, and such directions it was the duty of the plaintiffs to follow; and said Cunningham had also a right to withhold payment for all bad work done and sufficient to cover the expense of removing and re-constructing such bad work, and the payment of two-thirds of the money as the work progressed is subject to the modification in a subsequent portion of the same contract, that the payments of said two-thirds should be under the direction of said Cunningham—no reasonable directions made by him with regard thereto, would furnish a legal excuse for the non-performance of the contract by the plaintiffs.

To which defendant excepted, and asked the following, which was given by the court:

"The plaintiffs were obliged to furnish such material and to do such workmanship as directed by Cunningham, unless the plaintiffs show that such directions were so unreasonable in view of the nature, object and purpose of the work as to plainly show that they were violative of the intent and meaning of the parties to the contract."

The verdict was for the respondents. Appellant filed a motion for a new trial for the following reasons:

1. Because the verdict is against the weight of evidence.

2. Because it is against the instructions of the court.

3. Because the court gave the jury erroneous instructions.

4. Because the court erroneously refused instructions asked by the defendant.

5. Because some of the jury misbehaved during the argument to them in behalf of defendant by going to sleep.

6. Because the verdict is excessive.

7. Because they erred in point of law.

8. Because the instructions of the court were calculated to mislead the jury.

9. The court admitted inadmissible evidence on the part of the plaintiffs.

10. Because the court refused to admit competent evidence offered by defendant.

The court refused to grant the motion—appellant excepted, and appeals to this court.


TODD & KRUM, for appellant.

I. Respondents were not entitled to recover anything, if they quit the performance of their part of the contract without legal excuse: 13 I. R., p. 94; also p. 53; 18 Wend., p. 187; 8

Watts & Serg., p. 367; 4 W. Rep,, p. 41; 9 ib, p. 218; 10 Mo. R., p. 609, shows the rule works both ways. Hence, instruction No. 1, asked by appellant, should have been given, and No. 1, given by the court, should not have been given; and the latter was erroneous for another reason, to-wit: that it allows respondents to recover the full amount the work done came to; whereas, by the contract only two-thirds of the prices for the stone work were presently due and the remaining one-third was to be settled for when all the stone work was completed, by appellant's note at four months—see contract.

II. Instruction No. 2, asked for by appellant should have been given because the contract expressly provides that the workmanship and materials are to be under the immediate direction of E. L. Cunningham. Suppose Cunningham permitted respondents to do the work weakly and badly, could not they recover the contract price? Undoubtedly, unless fraud or collusion was shown.

III. Instruction No. 3, asked by appellant should have been given: 1. Because there could be no refusal by appellant to pay respondents till a definite demand was made: 2. Because appellant might refuse to pay respondents if respondents refused to do their work as positively directed by Cunningham, because their workmanship and materials were to be under his directions and also the amount of money to be paid them—see contract.

IV. Instruction No. 4, asked by appellant should have been given:⁻ because a refusal to let respondents see the contract was no interference with or prevention of their performing their part of the contract, or doing their work: 2. If such refusal by Cunningham was a prevention or a material obstruction; yet if C. held it as the mutual depository of both parties, a willfully wrongful refusal by him to show it to either party, could be no cause of complaint against the other, much less a violation of the contract, if such other did not direct the refusal. A principal is not responsible for the wilfully unauthorized acts of his agent.

V. Instruction 5, asked by appellant should have been given: Because the doing over of the wall referred to in said instruction, and the refusal to pay respondents money until they made the wall over, were past events, when respondents quit, and by them had been assented to. The requirement to do the wall over, if in Cunningham's judgment bad, and the refusal to pay any money till done, were, besides, within the power of Cunningham, under the contract, as already shown.

VI. Instruction 6, asked for appellant, should have been given. If a party once abandon his contract for services, he cannot reinstate himself by offering to return and perform his contract, the other party objecting; 8 Com. k. p. 63.

VII. Instruction 7, asked for by appellant, should have been given: Because, by the assent and the agreement of the parties, Cunningham was made superintendent of the construction of the building; therefore, any wrongful acts of his not known or approved by appellant, which prevented respondents from performing their part of the contract, they had no right to regard as the acts of appellant. Suppose C. had permitted the respondents to lay the wall of less thickness than required by the contract, or, without mortar, and this was not known to appellant, could the respondents make appellant pay for it?

VIII. Instruction 1, given by the court of its own motion, should not have been given:

1. Because there is no evidence authorizing the submitting to the jury as a specific question in the case whether appellant or his agent prevented respondents from completing their work within the time agreed in the contract.

2. Because it makes any wrongful acts of appellant's agent chargable to appellant whether he knows or approves of them or not.

3. Because it authorizes the jury, if they should find for the respondents under this instruction, to allow them more than contract prices for their work. 7 Wend. R., p. 121.

IX. The court erred in giving instruction 2nd: Because it authorizes the jury to allow the respondents the *full* amount of their work at the contract prices, although they may have quit the work wrongfully, when the contract provides that the payment of one-third of the price of the stone work is not to be paid for till four months after the whole of the work in the contract is completed.

Lee & Dolen, Respondents vs. Ashbrook, Appellant.

X. The court erred in giving 4th instruction, when taken in connection with its refusal to give those marked 2 and 3 asked for by appellant. 1 Because it makes it a wrongful act towards respondents by appellant, if by reason of the refusing to make good any bad wall, he withholds any more money from them than just enough to cover the expense of making such wall good.

2. Because the reasonableness and propriety of C.'s directions about the workmanship and materials given by him honestly, and according to his best judgment are submitted to their persons to judge of, to-wit, the jury; thereby changing the contract in making the workmanship and materials for the walls subject to the directions of third persons—strangers—a miscellaneous jury, instead of those of C., as provided for in the contract; and if such third persons—strangers or miscellaneous jury, should differ in opinion from C. as to what workmanship and materials would be most suitable for the building under construction then the directions of C. have become unreasonable obstacles to the respondents, so far as to impose unnecessary expense and difficulties upon them within the meaning of instruction No. 1 given by the court.

FIELD, for respondents.

I. It appears by a comparison of the vedict of the jury with the instructions that they found their verdict on facts hypothetically stated in the first instruction.

As the first instruction is unquestionably correct, it is not important whether the other instructions were strictly proper, for the case below appears not to have turned upon them.

II. But the 2d instruction is believed to be legal and proper—see adjudged cases in 2d Smith's leading cases, p. 1, Cutter vs. Powell, and notes, last Am. edition; Britton vs. Turner, 6 N. H. Rep., 481; Helen vs. Wilson, 4 Mo. Rep.

It will be observed that the parties provided that payment should be made as the work progressed. There is, consequently, no ground to contend that the contract was entire and indivisible.

NAPTON J., delivered the opinion of the court.

The most material point, touching the law of the case, rises from the second instruction given by the court.

The old rule in relation to contracts, which in their nature were entire and indivisible, required from the plaintiff an entire performance of his part of the contract, as a condition precedent to his recovery, unless some legal excuse was shown. This rule was fully adopted in this State in early cases, especially in Helen vs. Wilson (4 Mo. Rep., 41.) If by the terms of the contract, certain sums became due upon performance of separate part of the work, the rule was not applicable and even where the contract is entire, the modification of the rule as laid down by the circuit court in this case is certainly more consonant to equity and more likely to be practically enforced by juries. Although a party has abandoned his work, before completion, without just cause or legal excuse, yet if the other party to the contract receives it and makes use of it, and is benefitted by it, he ought still to pay the value

of the work, not exceeding contract price, if that value exceeds the damage he has sustained by reason of the failure to complete the work. Butler vs. Turner, 6 N. H. Rep., 481.

This is the only point upon which the instruction given by the court, upon the trial varied from those asked by defendant. The other instructions substantially declare the law to be as asked by the defendant—although not so much in detail, nor perhaps so definite.

The verdict of the jury is not entirely satisfactory to our minds—but it is not for such a cause, that we feel authorized to set it aside, especially as the plaintiff remitted about $210 and all the interest, thus reducing his recovery to a sum below the amount sufficient to cover the worth of his labor and materials. Both parties are thus made to bear a portion of the loss. We shall not disturb the verdict.

Judgment affirmed.