A. MILLSAP ET AL., APPELLEES, V. JOHN BALL ET AL., APPELLEES, IMPLEADED WITH H. K. GALBRAITH ET AL., APPELLANTS.

[FILED NOVEMBER 11, 1890.]

1. **Mechanic's Lien**: PARAMOUNT TO THAT OF VENDOR. Where a vendee of real estate, under a contract of sale, containing a stipulation that the purchaser shall construct a building upon the premises, erects a building thereon, the laborer or materialman is entitled to a lien against the property paramount to the lien of the vendor.

2. ———: FILING CLAIM. Under section 2 of the mechanic's lien law a subcontractor, to obtain a lien, must make out and file with the recorder of deeds of the county where the building is erected a sworn statement of the amount due from the contractor for labor and materials, within sixty days from the performing of the labor and furnishing of the materials.

3. ———: LIMITATIONS. The contractor cannot maintain a suit against the owner until after the expiration of that time.

4. ———: SET-OFF. If a building is not constructed according to contract, the owner is entitled to offset any damages he may have sustained thereby, and the lien attaches for the amount actually due after deducting such damages.

APPEAL from the district court for Douglas county. Tried below before GROFF, J.

*Scott & Scott*, for appellant Omaha Lumber Co., cited: Bigelow, Estoppel, 547, 565-6, and citations; *Dodge v. Pope*, 93 Ind., 480, 487; *Gregg v. Wells*, 10 Ad. & E. [Eng.], 90; *Slocumb v. R. Co.*, 57 Ia., 675; *Patterson v. Baumer*, 43 Ia., 477, and citations; *Chapman v. Chapman*, 59 Pa. St., 214; *Campbell v. Nesbitt*, 7 Neb., 303, and citations; *Gillespie v. Sawyer*, 15 Id., 541; *Buckstaff v. Dunbar*, Id., 116, and citations; *Lessee v. Coats*, 1 O., 246; *Morningstar v. Selby*, 15 Id., 345; *Lamb v. Lane*, 4 O. St., 178; *Scovern v. State*, 6 Id., 291; *Rogers v. Hotel Co.*, 4 Neb., 58-9; *Edminster v. Higgins*, 6 Id., 270; *Rhea v.*

*Reynolds,* 12 Id., 133; *Ansley v. Pasahro,* 22 Id., 662; *Ault-man & Miller v. Mallory,* 5 Id., 180; 9 Id., 144; *McCormick v. Stevenson,* 13 Id., 70; *McCormick v. Lawton,* 3 Id., 452; *Rollin v. Cross,* 45 N. Y., 768; *Hackett v. Badeau,* 63 N.Y., 476; 2 Jones, Liens, sec. 1254, and citations; *Smith v. Norris,* 120 Mass., 58; *Davis v. Humphrey,* 112 Id., 309; *Peabody v. East'n Soc.,* 5 Allen [Mass.], 540; *Hayes v. Fessenden,* 106 Mass., 228; *Hilton v. Merrill,* Id., 528; *Parker v. Bell,* 7 Gray [Mass.], 429; *Weeks v. Walcott,* 15 Id., 54; *Mulrey v. Barrow,* 11 Allen [Mass.], 152; *Clark v. Kingsley,* 8 Id., 543; *Tanner v. Bell,* 61 Ga., 584; *Weber v. Weatherby,* 34 Md., 656; *Walker v. Burt,* 57 Ga., 20; *Henderson v. Connelly,* 123 Ill., 98; *Hickox v. Greenwood,* 94 Id., 266; *Paulsen v. Manske,* 18 N. E. Rep. [Ill.], 275; Story, Ag., sec. 476; *Whitelock v. Hicks,* 75 Ill., 460; *Lewis v. Rose,* 82 Id., 574; *O'Neil v. School,* 26 Minn., 331; *Meyer v. Berlandi,* 40 N. W. Rep., 513; *Laird v. Moonan,* 32 Minn., 358.

*McCoy & Olmstead,* for appellants Deiss *et al.,* cited: *Edminster v. Higgins,* 6 Neb., 265, 270, 299; *Rhea v. Reynolds,* 12 Id., 128, 133; *Ansley v. Pasahro,* 22 Id., 663; *Westheimer v. Reed,* 15 Id., 663; *H. & G. I. R. Co. v. Ingalls,* Id., 128; *Fremont F. & B. Co. v. Dodge County,* 6 Id., 25; *Bradford v. Peterson,* ante, p. 96; *Henderson v. Connelly,* 123 Ill., 98; *Hill v. Gill,* 42 N. W. Rep. [Minn.], 294; *Paulsen v. Manske,* 18 N. E. Rep. [Ill.], 275; *Bright v. Boyd,* 1 Story [U. S. C. C.], 478, 491-2-3-4; *Herring v. Pollard,* 4 Humph. [Tenn.], 362; *Mathews v. Davis,* 6 Id., 327; *Rhea v. Allison,* 3 Head [Tenn.], 180; *Humphreys v. Holtsinger,* 3 Sneed [Tenn.], 229; *Rainer v. Huddleston,* 4 Heisk. [Tenn.], 226.

*H. B. Holsman,* for appellant Groves.

*W. J. Connell,* and *W. C. Ives,* for appellees Boggs & Hill, cited: *Lenderking v. Rosenthal,* 63 Md., 28; Phillips,

Mech. Liens, secs. 128, 131, 244, 245, and cases; *Denison v. Shuler*, 47 Mich., 598; *Gillispie v. Bradford*, 7 Yerg. [Tenn.], 168; *Neil v. Kinney*, 11 O. St., 58; 1 Add., Contr. [Am. Ed.], sec. 30; *Rollin v. Cross*, 45 N. Y., 768; 1 Parsons, Contr. [7th Ed.], p. 8\*; *Doolittle v. Goodrich*, 13 Neb., 279; *Rhea v. Reynolds*, 12 Id., 128; *Robinson v. Appleton*, 15 N. E. Rep., 763; *Kline v. Lewis*, 1 Ashm. [Pa.], 31.

NORVAL, J.

The record shows that on the 26th day of September, 1887, lots 6 and 7, block 5, Omaha View, were owned by Boggs & Hill, and on that day they sold the lots to the defendant A. F. Groves, for the sum of $2,600. The sum of $115 was paid in cash and time was given for the balance. Boggs & Hill delivered to Groves the following receipt and memorandum of the terms of sale:

"SEPTEMBER 26, 1887.

"Received of A. F. Groves one hundred and fifteen ($115) dollars to apply on lots six and seven, block five, Omaha View, price of lots to be $2,600. Contract to be given for same when the foundations for buildings on said lots are commenced. Payable as follows: In five equal payments, on or before, at 8 per cent. Houses to cost at least $600 to $700 each.          BOGGS & HILL."

At the time of the sale the lots were vacant and unimproved. Groves went into possession and contracted with the defendant Ball to erect four cottages on the lots. The buildings were constructed and the plaintiff Millsap and several of the subcontractors, who are defendants, filed their liens for materials furnished and labor performed for the construction of the buildings. This action was brought by A. Millsap against John Ball, the contractor, Boggs & Hill, the vendors, A. F. Groves, the vendee, and the several lien-holders, to foreclose his lien. Each lien-holder

filed a cross-petition setting up his lien upon the premises and buildings.

The defendants Boggs & Hill deny in their answer the claims of the mechanics and material-men, and admit that they made the agreement in writing with the defendant Groves (copied above) by which they agreed to sell to him the lots in controversy, and that the defendant Groves agreed to pay them therefor the sum of $2,600 in the manner following, to-wit: Cash, $115, and the balance in five equal payments.

The answer further states that it was agreed that, upon the payment in full of said sums of money, and certain taxes and interest, Boggs & Hill were to make to Groves a warranty deed for said premises; that Groves went into possession under said contract, and paid the cash payment of $115, and that said contract is in full force. Boggs & Hill claim a vendor's lien on the lots and the buildings thereon superior to the liens of the mechanics and material-men.

The defendant Groves, for answer, denies that either of the parties to the action has any valid lien or interest in said property. He further sets up that he contracted with Ball to furnish all labor and materials, and erect four houses on the lots for the sum of $700; that about January 4, 1888, after partly completing the buildings, Ball abandoned, refused, and neglected to carry out the terms of the contract, and that neither Ball nor any one of the subcontractors have carried out the agreement; that the defendant Groves, on the 15th day of May, 1888, completed said buildings so far as practicable, considering the unworkmanlike manner in which the work was performed, and the inferiority of the materials furnished by Ball, and that all the mechanics' liens were prematurely filed before the completion of the buildings. There are other allegations in the answer of Groves to which it is not necessary to refer.

The court found that there was due from Groves to
Boggs & Hill $2,485 as balance of purchase money, to-
gether with 8 per cent interest thereon from September 26,
1887.   The court also found the amount due the various
lien holders.   A decree of foreclosure was rendered, which
gave Boggs & Hill a paramount lien for the purchase
money, and the premises were ordered sold and the pro-
ceeds applied, after the payment of costs, first, to the
payment of the claim of Boggs & Hill, and the balance
*pro rata* among the mechanic lien holders.   The defendant
Groves and the mechanic lien-holders appeal.

The main question raised in this case is identically the
same as we have just considered at the present term, in the
case of *Bohn Mfg. Co. et al. v. Kountze, ante,* p. 719.   We
held in that case that where a vendee of real estate under a
contract of sale which contained a stipulation that the pur-
chaser shall construct a building upon the premises, erects
a building thereon, the laborer and material-man are en-
titled to a lien against the premises paramount to the lien
of the vendor.   The memorandum of agreement in the
case we are now considering contemplated that the pur-
chaser, Groves, would erect houses on the lots to cost at
least $600 to $700 each.   The buildings were constructed,
but the labor performed and materials furnished have not
not been paid for.   Boggs & Hill, having authorized the
purchaser to make the improvements on the property, to
which they held the legal title, we hold, for the reasons
given in the Kountze case, that they postponed their lien
for the unpaid purchase money to that of the mechanic
and material-man.

We will now pass to the consideration of the points
raised by the appellant Groves.   It appears that after Ball
abandoned the contract for the construction of the build-
ings, H. A. Schreckingast, in pursuance of a contract with
Groves, furnished the balance of the hardware and the
labor necessary to complete the buildings, amounting to

$75.75. The last item was furnished on the 9th day of May, 1888. Within sixty days thereafter Schreckingast filed his answer and cross-petition herein, and upon the trial the defendant Groves objected to the Schreckingast lien being introduced in evidence, because his suit was prematurely brought. The court thereupon permitted this answer and cross-petition to be withdrawn from the files and to be refiled. This ruling is assigned for error.

Under section 2 of the mechanic's lien law, a subcontractor, to obtain a lien, must make out and file with the register of deeds of the county where the building is erected, a sworn statement of the amount due him from the contractor, within sixty days from the performing of the labor or the furnishing of the materials. The section also provides that "No owner shall be liable to any action by the contractor until the expiration of the said sixty days." It is obvious that a contractor cannot lawfully bring an action against the owner of the building within sixty days after performing the last labor or furnishing the last item of material. To bring the case within the provisions of the statute, Schreckingast withdrew his answer and cross-petition and refiled the same. At that time the sixty days' limit had elapsed, and he was entitled to maintain his action. Of course, on the refiling of the pleading, Groves would have been entitled to a continuance of the hearing upon the cross-bill had he demanded it. Failing to request a postponement, there was no error committed in proceeding with the trial.

After the lienors had introduced their testimony in support of their respective claims, the defendant Groves offered to prove that the contract entered into between Ball and himself had never been complied with by Ball, and that the buildings were not erected according to the terms of the contract. Groves's counsel stated to the court that his purpose in offering this testimony was to show that the liens were prematurely filed and that they could not file

and enforce their liens until the buildings were completed and the contract complied with. The court ruled out the testimony.

It will be noticed that the excluded evidence was not tendered in support of any claim for damages which Groves may have sustained by the failure of Ball to fulfill his contract. In fact no such issue was tendered in Groves's answer. Had such been the purpose of the excluded testimony, under proper pleadings it would have been error to have refused to receive it.

If we understand the position of Groves' counsel it is this: that neither a contractor or subcontractor can enforce a mechanic's lien when the building is not completed according to contract. We cannot accept this as a correct statement of the law. There is certainly no legislative enactment so limiting the right of the mechanic or materialman to a lien. He must establish his account, and the lien attaches for the amount found to be due thereon. If the contract for the erection of the building is not fulfilled by the contractor, it does not necessarily defeat his lien. The owner of the building is entitled to set up as a counter-claim any damages he has sustained by reason of the breach of the agreement, and the lien attaches for the amount actually due, after deducting such damages.

One D. M. Bowman was examined as a witness to establish his claim for a lien for labor performed. He was cross-examined by Mr. Holsman, counsel for Mr. Groves. The bill of exceptions shows that before the last question propounded to the witness was answered, the court ordered the witness to stand aside, and another witness was called. No objection or exception having been taken to the order dismissing the witness from the stand, it cannot be considered here.

That part of the decree of the lower court awarding Boggs & Hill the prior lien on the property is reversed, and the decree will be modified in this court giving the para-

mount lien to the mechanic lien-holders.    In all other respects the decree is affirmed.

DECREE ACCORDINGLY.

THE other judges concur.