RAYMOND PETERS, JR., APPELLEE, v. CLINTON J. HALLIGAN ET AL., APPELLANTS, IMPLEADED WITH UNITED STATES OF AMERICA, APPELLEE.

152 N. W. 2d 103

Filed July 7, 1967. No. 36492.

McGinley, Lane, Mueller & Shanahan and James M. McQuillan, for appellants.

Firmin Q. Feltz, for appellee Peters.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

The defendants Halligan appeal from a judgment of the district court foreclosing a mechanic's lien for labor and materials in the sum of $1,576.82 furnished in the construction of a basement on defendants' property.

In his petition plaintiff alleges that he was employed to construct and furnish the material for a basement on the defendants' premises and that the fair and reasonable value of the labor and material charges was in the sum of $1,576.82. Defendants, in an answer and cross-petition, allege that the plaintiff did perform work and labor on their premises under an oral contract; that the plaintiff entered into an oral contract with the defendants to construct a basement and a frame addition to the trailer home of the defendants for the agreed sum of $2,850; that thereafter the plaintiff did construct the basement; that it was defectively constructed by reason of the failure of the plaintiff to properly seal and

waterproof the floor; that after construction of the basement plaintiff refused to construct the frame addition to defendants' trailer as provided under the oral contract; that the defendants were required to employ another contractor to construct the trailer house addition; and that by reason of the defective construction work in the basement and the additional cost of constructing the trailer house addition they were damaged in the sum of $1,968.20.

Outside the question of defective workmanship in the construction of the basement, the basic question involved in this case is whether the parties entered into a contract for an agreed price for the construction of a basement and the trailer house addition. In approaching this problem, we bear in mind the basic rule that a fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract. Voss v. Linn, 171 Neb. 32, 105 N. W. 2d 383; Griggs v. Oak, 164 Neb. 296, 82 N. W. 2d 410. The evidence in this case is in irreconcilable conflict consisting of the testimony of Peters and the defendant Clinton J. Halligan. A few days prior to August 25, 1965, the Halligans contacted Peters in Ogallala, Nebraska, about the building of an addition on their trailer house which, at that time, was located on their parent's property but which they planned to move to their property south of Brule, Nebraska. Peters told them that he was building a house at that time; that he did not know whether he had time to do the job; and that he had never done anything like that before. In response to the Halligans' request, Peters went out to the trailer house to discuss the matter with them. At this time they talked about moving one wall of the trailer out to form the outside wall of the new addition and filling in the ends and the ceiling. They discussed the sub-floor and the flooring, the stairwell location in the basement, the moving and possible installation of cup-

boards, and various other details as to the addition. At this time, the Halligans stated they wanted a basement under the trailer house that was to be constructed on their property south of Brule on which the trailer was to be moved, and there was discussion of the details of the basement construction. Peters testified that the main thing that the Halligans were interested in was to get the basement done so they could get the trailer moved to their property south of Brule. After this conversation the parties visited the Halligan place south of Brule to inspect the construction site. The basement under the trailer house was to be 20 feet by 48 feet and the basement under the new addition was to be 12 feet by 22 feet. Peters' attention was called to a spring located close to the proposed site of the basement and to a wet spot at the site of the excavation. Peters told Halligan that in order to prevent any water problem he was going to put in a polyethylene seal.

Peters testified he told the Halligans, with reference to the construction of the addition, that he did not know actually when he could do it; that he could not give them any possible date; that at all times in his conversation with them he stressed there was no way he could give an exact figure because he did not know exactly what they had in mind; that he did not know what he might run into; that he had never done anything like that before; and that the cost of an ordinary basement was at least $1,000 for the blocks and laying.

It appears from the plaintiff's evidence that he did not do any plumbing or electrical work and, in the preliminary negotiations, there was no discussion as to the electrical work or the plumbing other than hooking up a temporary toilet drain in the trailer prior to the time of the construction of the addition. The testimony is that the defendants were securing an F.H.A. loan to finance the basement and the addition. Peters testified that in giving the Halligans a figure of $1,800 on the addition and a figure of $1,000 on the basement these

were only estimates and the defendants "would have to allow accordingly." The evidence shows that there were no written plans or specifications for the building of the addition or the basement and none were ever introduced into evidence in this case. Peters testified that there were some, rough specifications in writing submitted to the F.H.A. for the loan but again the substance of his testimony is that this was a mere estimate and he could not give an exact figure because, he did not know exactly what they wanted and because he did not know what he might run into in building the addition.

Defendant Halligan's testimony varies considerably from the plaintiff's testimony. He testified that when Peters came out to discuss the addition they discussed "what ideas we had as far as the addition to the kitchen." He says they discussed the size of the addition, the, construction and size of the basement, the floor covering, the details of the walls, the building of the walls out 12 feet from the trailer, the exterior to be aluminum covered, the interior to be of wood paneling, the ceiling, the placement of the stairway, the building of cabinets and their location, the installation of insulation and aluminum windows, the moving of the, sink, and the electrical outlets around the top of the counters. They made a trip to the basement site where they discussed the details of the, construction and Halligan advised Peters about the spring and asked him about a water problem in the basement. He says that the plaintiff was taking notes in a small notebook during this period of time and after these conversations Peters left and returned and told defendant Halligan that it would cost $1,850 to build the kitchen. He had previously given him a figure of $1,000 on the basement. Halligan told him that he needed these, figures for the F.H.A. in order to get a loan. He does not testify that they had a specific conversation or agreement that this would be the contract price. That inference must be drawn from the following testimony on the part of Halligan: "When

he told us the figures that he had, we told him that was agreeable with us, and asked him when he could start construction, * * *."

We observe that no explanation appears as to why the defendant Halligan's wife did not testify in this case and corroborate his testimony. We observe further that Peters' repeated and precise testimony that the figures he furnished the Halligans were only estimates and the reasons he gave therefor stand undenied in the record by Halligan.

The basement was finished about October 25, 1965. In November or December 1965, defendants received a partial bill for $1,356 and a final one for $1,586.31. In their conversations Peters demanded payment and we observe that Halligan did not object to the amount or assert that the contract was for $1,000 but merely stated to the plaintiff that he had not finished cleaning up the material at the site of the excavation. In a conversation in the first part of November 1965, Halligan told the plaintiff that he was planning on him constructing the addition and was wondering when he could start it. Halligan not only made no objections to the bill rendered him for the cost of materials and labor but we could reasonably infer that he intended to proceed on the same basis of payment with reference to the addition when he inquired of the plaintiff and insisted that the plaintiff begin work on the addition. We are further aided in the determination of this issue by the rule that where there is irreconcilable conflict on a material issue, this court will, in determining the weight of the evidence of witnesses who appear in court to testify, consider the fact that the trial court observed them and their manner of testifying and must have accepted one version of the facts rather than the other. Uptegrove v. Elsasser, 161 Neb. 527, 74 N. W. 2d 61; Brown v. Brown, 146 Neb. 908, 22 N. W. 2d 148; O'Brien v. Fricke, 148 Neb. 369, 27 N. W. 2d 403. The trial court must have found, in coming to the conclusion that it did,

that there was no contract between the parties for the building of the basement and the addition for the agreed price of $1,000 for the basement and $1,850 for the addition, or a total of $2,850. We come to the same conclusion.

The defendants strongly contend, nevertheless, after the basement was done, that the plaintiff Peters refused to perform the contract for the building of the trailer addition; that he, gave no excuse for his action except that he would not and could not do it; that therefore he abandoned the contract; and that he is not entitled to recover on a quantum meruit basis for the reasonable cost and charge, of the labor and materials furnished. There is no question, under the evidence, that in November 1965 the plaintiff informed the defendants that he could not construct the addition. Accepting defendants' own testimony in this respect, Halligan testified that the plaintiff told him that he had a man hired who he was going to send out to complete the addition on the trailer house but Halligan told him, "Well, if you are not going to complete the job, I will do my own hiring, as far as completing it." The evidence shows that the, defendants did hire a contractor by the name of Hopken to construct the trailer addition on a labor and material basis at a total cost of $4,580.84 which represented the fair and reasonable cost therefor. Assuming, therefore, that the plaintiff did contract to build the trailer addition and that his failure and refusal to construct it constituted a lack of substantial performance, the question arises as to whether this action forfeits the plaintiff's right to establish a mechanic's lien for the reasonable value of his services performed and the labor and material furnished. Our mechanic's lien statute provides as follows: "Any person who shall perform any labor or furnish any material, * * * for the construction, erection, improvement, repair, * * * of any house, * * * building, or appurtenance, * * * by virtue of a contract or agreement, expressed or implied, with the, owner

thereof or his agents, shall have a lien to secure the payment of the same upon such house, * * * building, or appurtenance and the lot of land upon which the same shall stand or the work is performed, * * *." § 52-101, R. R. S. 1943.

Our mechanic's lien statutes are cumulative and remedial in nature, and require a liberal construction so as to effectuate their objects and purposes, and they find their basis in the equitable principle that everyone who, by his labor and materials, contributes to the preservation or enhancement of the property of another, thereby acquires a right to compensation. Muenchau v. Swarts, 170 Neb. 209, 102 N. W. 2d 129; Greenblatt v. Goldin (Fla.), 94 So. 2d 355, 59 A. L. R. 2d 877. We note that our statute refers to "any person" who performs labor or furnishes material "by virtue of a contract or agreement, expressed or implied" shall be entitled to a lien. The statute does not require any particular degree of performance of a contract, but simply uses the term "by virtue of a contract or agreement." It is inferable from the language of the statute itself that a person is entitled to a lien for the reasonable value of the benefit conferred upon property, irrespective of the degree of performance of the contract. The question is apparently a first impression in this state. As far as we can determine, this court has never held that even if a contractor abandons his contract, he forfeits any right to recover for material and labor actually performed of benefit and value to the defendant's property. We have held, however, in construing our mechanic's lien statutes that if the furnishing of material and labor under a contract is sufficient to create an indebtedness or liability, it is sufficient to create a lien under the provisions of the statute. Rosebud Lumber & Coal Co. v. Holms, 155 Neb. 459, 52 N. W. 2d 313; Great Western Manufacturing Co. v. Hunter Bros., 15 Neb. 32, 16 N. W. 759. The general rule is that in spite of lack of substantial performance, where there has been a part

performance and it has been of substantial benefit to the other party and he has accepted and retained the benefits thereof, he should not be permitted entirely to avoid the duties assumed by him under his contract, and, under such circumstances, the party partially performing is entitled to recover the reasonable or fair value of such performance, subject to the reciprocal right of the other party to recoup such damages as he has suffered from the failure of the plaintiff to perform fully or substantially his contract. 17A C. J. S., Contracts, § 511, pp. 829 and 830; 17 Am. Jur. 2d, Contracts, § 379, p. 823. But the defendants claim that there can, in no case, be a recovery in case of a voluntary incompletion or abandonment of the contract, which they assert to be a fact in this case. On this question there appears to be a conflict in the authorities. It is true that in the cases cited by the defendants in some jurisdictions a party who abandons a contract or refuses to perform it cannot recover, either on the contract or on a quantum meruit, the value of the labor or materials he has expended in his partial performance. The opposite and we believe the better view is held in other jurisdictions. It is pointed out in the authorities discussing this question that a party who contracts to perform certain specified labor and to furnish materials and then breaks his contract in the first instance, without any attempt to perform it, can be made liable to pay only the damages which the other party has sustained by reason of such nonperformance, which in many instances may be trifling. A party who has entered upon a contract, even though he has not substantially performed it, may have rendered a substantial benefit to the other party, and yet be subjected to a loss of all which he has performed in the nature of damages for the nonfulfillment of the remainder of the contract, upon the technical rule that the contract must be substantially performed in order to warrant a recovery of any part of the compensation. The rule denying recovery, therefore, puts the party

who partially performs his contract in a much worse position than one who wholly disregards his contract, and the other party may receive much more, by the breach of the contract than the injury he has sustained by such breach and more than he could be entitled to if he were, seeking to recover damages by an action. We believe the better rule to be that a party may recover on a quantum meruit basis for partial performance for the value of benefits conferred even though he abandons the contract or refuses to perform it, subject to any counterclaim for damages that the other party has sustained by reason of the breach of the agreement. See, 17 Am. Jur. 2d, Contracts, § 380, p. 824; Pixler v. Nichols, 8 Iowa 106; Zimmerle v. Felzien, 121 Kan. 34, 245 P. 1024; Lee & Dolen v. Ashbrook, 14 Mo. 378; Parcell v. McComber, 11 Neb. 209, 7 N. W. 529, 38 Am. R. 366; McMillan v. Malloy, 10 Neb. 228, 4 N. W. 1004, 35 Am. R. 471; Britton v. Turner, 6 N. H. 481; Lynn v. Seby, 29 N. D. 420, 151 N. W. 31. We note further that the annotator in the American Jurisprudence citations above cites two Nebraska authorities in sustaining the rule we have announced herein. In McMillan v. Malloy, *supra,* the plaintiff entered into a contract to thresh an entire crop of wheat for the defendant. He threshed only about one-third of the crop and then sued to recover the value of his services. The court held: "* * * that the entirety of the contract having been severed by part performance, beneficial to the employer, the employee was entitled to recover the value of his labor over and above the, damages sustained by a breach of the contract." More closely in point is the case of Millsap v. Ball, 30 Neb. 728, 46 N. W. 1125, wherein this court said as follows: "If we understand the position of Groves' counsel it is this: that neither a contractor or subcontractor can enforce a mechanic's lien when the building is not completed according to contract. We cannot accept this as a correct statement of the law. There is certainly no legislative enactment so limiting

the, right of the mechanic or materialman to a lien. He must establish his account, and the lien attached for the amount found to be due thereon. If the contract for the erection of the building is not fulfilled by the contractor, it does not necessarily defeat his lien. The owner of the building is entitled to set up as a counterclaim any damages he has sustained by reason of the breach of the agreement, and the, lien attaches for the amount actually due, after deducting such damages."

We feel that the conclusion we come to follows the language and the purpose, of the statute and the holding that if the furnishing of material and labor under a contract is sufficient to create an indebtedness or liability, it is sufficient to create a lien under the provisions of the statute. Rosebud Lumber & Coal Co. v. Holms, 155 Neb. 459, 52 N. W. 2d 313.

We further note that there were two distinct parts to this contract, one for the construction of the basement and one for the trailer addition. The parties considered them separately, both during their negotiations and during the conversations that followed the construction of the basement. The general rule is that a party who has failed fully to perform his contract cannot recover on the contract for part performance applies only to entire indivisible, and not to severable, contracts; and there may be, a recovery on the contract for a part performance of a divisible contract. 17 Am. Jur. 2d, Contracts, § 386, p. 831. We therefore hold that the plaintiff is entitled to recover on a quantum meruit basis for the reasonable cost and charge, of labor and materials furnished in the construction of the defendants' basement and that the defendants' rights are fully protected because they may, and have, set up a breach of the contract as a basis for the claim of damages.

The only remaining question is whether the defendants are entitled to recover on their counterclaim for the breach of the contract. Defendants in their brief do not contend that they are entitled to any net affirma-

tive damages but only ask that the plaintiff's petition for enforcement of the lien be dismissed. As we have noted, defendants have not proved a contract for a definite price for the building of the trailer addition. Their own evidence shows that they hired Hopken to complete the trailer addition on the basis of a reasonable cost for labor and materials. The evidence shows that the trailer addition was constructed in a substantially different manner than was contemplated in the original discussion with the plaintiff Peters. There is no evidence that there were any damages due to the delay in the construction or that the cost of the labor and materials was higher than if the plaintiff had completed the contract. On the other hand, the almost undisputed evidence is that Peters did not perform a proper and workmanlike job in waterproofing the basement. He knew there was a water problem and undertook, after discussion with the defendants, to protect the basement from water by placing polyethylene strips underneath the concrete floor. He failed to properly lap and seal the strips of polyethylene used, and drove stakes through the strips, creating holes, through which water leaked. The evidence shows that water seeped through cracks in the basement floor and that at times water collected to the extent of a 4-inch depth for which the defendants had to install a sump pump to remove the water. The defendants' evidence supplied by the contractor Hopken is that the reasonable value of the basement was reduced by the sum of $300 in this respect. The evidence shows that the reasonable cost and value of the labor and materials furnished in the basement were $1,576.82 and there appears no dispute in the evidence as to the reasonable cost and charge for these items. We therefore come to the conclusion that the plaintiff is entitled to a lien in the sum of $1,576.82 less the amount of $300 for damages due to the failure to properly perform the work of waterproofing the floor or a total net amount of $1,276.82, and the decree of the district court is modi-

fied accordingly. As modified the decree is affirmed.

AFFIRMED AS MODIFIED.

BOSLAUGH, McCOWN, and SPENCER, JJ., concurring.

We concur in the decision of the court that the judgment of the district court as modified should be affirmed upon the ground that the contract between the parties was severable and the record will support a finding of substantial performance of the contract to construct the basement.

We do not agree that a party may recover on a quantum meruit basis for partial performance for the value of benefits conferred even though he abandons the contract or refuses to perform it, subject to any counterclaim for damages that the other party has sustained by reason of the breach of the agreement. Generally, substantial performance is a condition precedent to any recovery where there is an express contract between the parties. See, Rickertsen v. Carskadon, 172 Neb. 46, 108 N. W. 2d 392; McGowan v. Gate City Malt Co., 89 Neb. 10, 130 N. W. 965.

Recovery upon a quantum meruit basis where there has been no substantial performance should be limited to the circumstances specified in Restatement, Contracts, § 357, p. 623.