THE OMAHA NATIONAL BANK, A NATIONAL BANKING ASSOCIATION, APPELLEE, V. CONTINENTAL WESTERN CORPORATION ET AL., APPELLEES, IMPLEADED WITH DAVE BENNETT, INC., A CORPORATION, AND M & S GRADING, INC., A CORPORATION, APPELLANTS.

274 N. W. 2d 867

Filed January 30, 1979. No. 41812.

Jon S. Reid of Kennedy, Holland, DeLacy & Svoboda, for appellant Dave Bennett, Inc.

James E. Lang of Marer, Venteicher, Strasheim, Seidler, Laughlin, Lazer & Murray, P.C., for appellant M & S Grading, Inc.

Zwieback, Brady, Kasher, Festersen & Pavel, P.C., and Gary M. Burton, for appellee Omaha National.

Hunter, Houlihan & Katz, for appellee First National of Council Bluffs.

Finlayson, McKie & Fisk and Louis M. Bruckner, for appellee Bank of Millard.

Heard before KRIVOSHA, C. J., BOSLAUGH, and BRODKEY, JJ., and RONIN and NORTON, District Judges.

RONIN, District Judge.
This is a real estate mortgage foreclosure action commenced by the appellee, The Omaha National Bank, by filing its petition to foreclose its mortgage upon two tracts of real estate in Sarpy County, Nebraska. The Continental Western Corporation (Continental) was the owner of the tract of land involved in this appeal. Both Continental and Antilles Corporation, the owner of the other tract, along with Dave Bennett, Inc., a corporation, (Bennett) and M & S Grading, Inc., a corporation (M & S) as mechanic's lien holders, were named defendants in the foreclosure action. Both Bennett and M & S answered appellee's petition and separately cross-petitioned for the foreclosure of their mechanic's liens which had been filed on the subject real estate.

After conferences and hearings in the District Court for Sarpy County, Nebraska, the parties en-

tered into a stipulation which was filed on December 13, 1976, and which became binding on all the parties. This stipulation resolved many of the issues, but left the remaining issues as to the validity and priority of the mechanic's liens of Bennett and M & S. Trial was held on March 15, 1977, and, after final submission of the issues, the court, on May 31, 1977, entered its memorandum opinion finding:

1. That the lien claim of Bennett was filed outside the statutory time limit and should be disallowed, and

2. That the contract of M & S was "too indefinite in its terms and requirements to be binding and is insufficient to support a mechanic's lien herein," and the lien claim should be disallowed.

On September 13, 1977, the District Court entered its decree of foreclosure which included the provisions of its memorandum opinion. Bennett and M & S filed motions for new trial, which were overruled. Appellants and cross-petitioners, Bennett and M & S, filed separate appeals from the decree of the District Court disallowing their separate mechanic's lien claims.

The facts relating to the Bennett mechanic's lien claim are these. On September 9, 1971, appellee, The Omaha National Bank, made a loan in the amount of $1,000,000 to the landowners, Continental and Antilles Corporation, evidenced by a promissory note secured by a mortgage executed by them on each of their tracts of farmland real estate. The documents were duly recorded on September 10, 1971, and that property is the subject of this foreclosure action. The intended use of the tract owned by Continental was for development of a residential subdivision with two 18-hole golf courses, known as the Coronado subdivision of Sarpy County, Nebraska.

Continental employed the engineering firm of Lamp, Rynearson (Lamp) to design and lay out the entire Coronado subdivision. In July 1972, Lamp contacted Bennett, whose primary business was to

design golf courses. Bennett started work as a sub-contractor for Lamp in October 1972, under an oral agreement which was later reduced to writing on January 27, 1973. Bennett prepared complete pre-liminary plans for both golf courses and detailed construction specifications for the north golf course. The grading work with M & S started in June 1973, and the irrigation system work was inspected by Bennett until all construction work was finally stopped in December 1973, because Continental was unable to continue to make payments.

In March 1974, a new written contract was entered into between Bennett and Continental. This con-tract replaced the previous contract between Lamp and Bennett. All the construction work on Coronado had been performed under the Lamp contract. The only services performed by Bennett after execution of the new written contract with Continental were rendered in April 1974, amounting to $577.28, and a separate bill for services and expenses for a trip to Nebraska in June 1974, in the sum of $187.27. Ben-nett filed its mechanic's lien on September 17, 1974, in the sum of $17,970.55 on the Coronado subdivision based on the written contract with Continental of March, 1974.

The law in Nebraska is clear that an architect who furnishes plans and specifications for an improve-ment on real estate is entitled to a mechanic's lien upon such real estate. VonDorn v. Mengedoht, 41 Neb. 525, 59 N. W. 800 (1894).

The time for filing a mechanic's lien cannot be ex-tended by tacking two or more contracts together. In Henry & Coatsworth Co. v. Halter, 58 Neb. 685, 79 N. W. 616 (1899) our court stated: "Where labor or material has been furnished by a party under dis-tinct contracts, the claim for a mechanic's lien under each contract must be filed within the time limited by the statute for that purpose." See, also, La Puzza v. Prom Town House Motor Inn, Inc., 191

Neb. 687, 217 N. W. 2d 472 (1974); § 52-102, R. R. S. 1943. Bennett's mechanic's lien makes no reference to any contractual relationship with Lamp. All the services of Bennett, except the two billings for April and June of 1974, were rendered under the contract of January 23, 1973. No lien claim of Bennett for services under the Lamp subcontract was filed under that contract in accordance with the statutory requirements of section 52-102, R. R. S. 1943, and therefore it cannot be allowed on a lien claim based on the later separate and distinct written contract of March 1974, with Continental.

Services were performed by Bennett in June 1974, which were separately billed in the sum of $187.27 because Continental desired Bennett to consult with another subcontractor who had refused to continue working since payments were not made to him on his billings and Continental was in financial difficulties. This service was not related to the March 1974 contract and was not a proper item to be included in its mechanic's lien. The record is clear that there was no construction work of any kind on the Coronado project after December 1973. There is a presumption that where more than 60 days intervene between the performance of work items in a mechanic's lien account, the last item performed was furnished under a separate contract. See Gatchell v. Henderson, 156 Neb. 1, 54 N. W. 2d 227 (1952). Our court held in Occidental Savings and Loan Assn. v. Cannon, 184 Neb. 659, 171 N. W. 2d 166 (1969) that: "The time for filing a lien cannot be delayed by performing minor labor or furnishing minor items of materials." The court finds that the separately billed item of $187.27 for services rendered by appellant Bennett did not sufficiently relate to the written agreement of March 1974, and that the trial court was correct in its finding that the entire lien claim of appellant Bennett was filed outside the statutory time limit and must be disallowed.

All the remaining parties have stipulated that appellee, The Omaha National Bank, is the first mortgage holder, including its later advancement of $87,800. The judgment of the District Court is also affirmed in determining that the remaining balance due appellee, The Omaha National Bank, has priority over all other liens of the parties in this action.

The facts relating to the mechanic's lien of M & S for grading of the Colorado subdivision are generally not in dispute. The sole and only issue is whether, under these undisputed facts, M & S has a valid mechanic's lien. The written stipulation filed on December 13, 1976, provides that Continental is indebted to M & S in the amount of $36,873.14 plus accrued interest in the amount of $18,208.22 to November 30, 1976, with interest accruing at the rate of $9.09 thereafter per day until paid, and that valid consideration was given. The two-page written memorandum contract between Continental and M & S was executed on June 2, 1973, and was received in evidence as exhibit 1 (B). Exhibit 1 (A) is the mechanic's lien filed by M & S on January 24, 1974, together with 20 pages attached thereto listing the dates and itemization of the grading work performed by M & S with the charges specified for each item. The record is undisputed that M & S commenced its grading work on Coronado on June 11, 1973, with the last work being performed on November 1, 1973. The mechanic's lien filed by M & S on January 24, 1974, is based on the written contract between the parties dated June 2, 1973.

The testimony of Clair Morgan, president of appellant M & S, is also undisputed that the entire Coronado subdivision was graded, which included all the lots and both golf courses. Exhibit 8 was received in evidence and is a partial release, dated April 2, 1974, of the mechanic's lien of M & S as to the Coronado subdivision except for lots 1 through 402, inclusive. Section 52-101, R. R. S. 1943, provides: "Any per-

son who shall perform any labor or furnish any material * * * (2) *for grading,* * * * *by virtue* of an open running account or a *contract* or *agreement, expressed or implied,* with the owner thereof or his agents, shall have a lien to secure the payment of the same upon * * * the lot of land upon which * * * the work is performed * * *.'' (Emphasis supplied.)

Our court in Peters v. Halligan, 182 Neb. 51, 152 N. W. 2d 103 (1967), expressly held that our Nebraska mechanic's lien statutes required a liberal construction so as to effectuate their objects, and that they should enforce the equitable principle that everyone who, by his labor and materials, contributes to the enhancement of the property of another should be compensated.

In Peters v. Halligan, *supra,* our court stated: ''The statute does not require any particular degree of performance of a contract, but simply uses the term 'by virtue of a contract or agreement.' It is inferable from the language of the statute itself that a person is entitled to a lien for the reasonable value of the benefit confined upon the property * * *.''

The aforesaid mechanic's lien statute does not require how definite or what terms the contract must contain. The record establishes that the parties themselves prepared the two-page written agreement of June 2, 1974, and entitled it as a ''contract.'' The document, exhibit 1 (B), establishes there was a meeting of the minds of Continental and M & S, that M & S would perform the grading work in Coronado, and that the hourly rate for the various grading equipment was agreed upon. The written agreement further provided that the cost of the first 18-hole golf course grading expense would not exceed $90,000, that the hourly report of time spent by M & S would be provided Continental weekly, and that there would be monthly draws by M & S based on the listed cost schedule. Clair Morgan, president of M & S, explained in detail the terms of the written

contract. The amount of the debt owed M & S has never been disputed.

We find the written contract of June 2, 1973, between M & S and Continental is sufficiently definite to comply with the mechanic's lien statute, that the trial court was in error in disallowing the M & S mechanic's lien, and that its lien is valid and sufficient in all respects on lots 1 to 402, inclusive, Coronado's subdivision, Sarpy County, Nebraska, as of the time and amount set forth herein.

The judgment of the District Court is affirmed as to the appellant Dave Bennett, Inc., a corporation; the judgment is reversed as to the appellant M & S Grading, Inc., a corporation; and the cause remanded with directions to enter a judgment in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.