CHARLES P. HAHN ET AL., APPELLEES, V. THOMAS BONA-
CUM, APPELLANT.*

FILED JUNE 8, 1906. No. 14,339.

1. **Mechanics' Liens:** FORECLOSURE. In a suit to foreclose a mechanic's lien for labor performed on a building under a contract, relief will not be denied the plaintiff because of a trifling omission in the performance of the contract, where there has been a substantial performance on his part.

* Rehearing denied. See opinion, p. 846, *post.*

2. Evidence examined, and *held* to show a substantial performance on the part of the plaintiff and sufficient to entitle him to the relief granted.

3. Evidence as between the owner and a defendant lien-holder examined, and *held* sufficient to justify a finding in favor of the latter for a greater sum than that found by the trial court.

4. Liens: PRIORITIES. A mechanic's or materialman's lien duly filed within the time required by law takes precedence over a mortgage subsequently executed by the owner.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Reversed with directions.*

*A. J. Sawyer,* for appellant.

*Billingsley & Greene, Kirkpatrick & Hager* and *Milton Schwind,* contra.

ALBERT, C.

On the 9th day of May, 1902, Charles Hahn, plaintiff, entered into a contract in writing with the defendant, Right Reverend Bishop Bonacum, whereby it was agreed that the plaintiff should furnish the labor for the brick work required in the erection of a certain building on the premises belonging to the bishop, in consideration whereof the bishop was to pay the plaintiff $3,500. The bishop was to furnish the material. The work was to be performed to the satisfaction of the bishop and to the satisfaction of the superintendent employed by him to supervise the work. Payments were to be made as the work progressed, upon estimates made and signed by the superintendent, a certain percentage to be retained until the completion of the work. The contract also contains these provisions: "The last payment not to become due until sixty days after completion of the building, and the full payment and satisfaction of said contractor of all mechanics' liens or claims, if any, filed or made on said building on account of labor performed on account of said contractor. The aforementioned estimates to be furnished

and signed by T. G. Kelly, superintendent.. Provided, that before the last payment is made a certificate shall be obtained by the contractor from the clerk's office of Lancaster county, signed by said clerk, that he has carefully examined the records and finds no liens or claims record?d against said works or on account of said contractor. * * * Sixth. The party of the first part to have not less than ten bricklayers employed on the work daily. * * * Ninth. Should the contractor fail to finish the work on or before the twelfth day of August, 1902, or within the ninety working days agreed upon, he shall pay or allow the proprietor by way of liquidated damages the sum of ten (10) dollars *per diem* for each and every day thereafter the said works shall remain incomplete. When any instalment becomes due under the terms of this contract, the proprietor shall be entitled to deduct from the amount thereof any sum or sums such proprietor may have paid any subcontractor, laborer or other person for work done for said building to be used in the performance of this contract at the request or with the knowledge of said contractor, and on the payment of the balance of such instalment, after making such deduction, shall be discharged from the liability therefor." On the 16th day of December, 1902, the plaintiff filed a mechanic's lien against the property in question for labor furnished under the contract, including certain items of extra labor, which he claimed were furnished by him, but not included in the contract, claiming a lien on the property in the sum of $1,312., On the 20th day of April, 1903, he commenced this suit for a foreclosure of his said lien, bringing in Ernest C. Thym, another lien-holder, and the Security Mutual Life Insurance Company, a mortgagee, as parties defendant.

Thym filed a cross-petition in which he also prayed the foreclosure of a lien against the same property for certain cut stone which he had furnished to the bishop for the construction of the building. His claim is based on a written contract whereby he agreed to furnish certain

cut stone for a consideration of $700. His lien also covers the following items which he claims to have furnished but which are not included in the contract: six stone caps of the value of $42.60; 150 feet of stone belt course of the value of $90; one stone platform in three pieces of the value of $16; changing caps to nine-inch bed of the value of $60. The material was furnished between the 1st day of April and the 21st day of October, 1902, the latter being the date the lien was filed. The insurance company also filed a cross-petition, praying that a certain mortgage executed to it by the bishop on the same property be established as a first lien on the premises. The mortgage was executed on the 22d day of October, 1902, and filed for record one day later. As to this mortgage there is no contest save as to the question of its priority.

As to the plaintiff's cause of action, the contest is between him and the bishop. One defense is that the plaintiff has never completed the work; another that the suit was prematurely brought, in that the plaintiff had never obtained a certificate from the clerk of Lancaster county showing that he, the clerk, had examined the records and found no liens against the property for work performed for the plaintiff by his workmen. Plaintiff's claim for extra work is denied. The bishop also filed several counterclaims against the plaintiff: (1) $2,400 liquidated damages for 240 days' default after the 12th day of August, 1902, in the completion of the work under the contract; (2) $240 damages for plaintiff's failure to keep 10 men at work daily on the building; (3) $360 for pipes, tanks, barrels, an engine, etc., furnished to supply water for mixing the mortar; $500 damage for the wrongful filing of the lien in question. Answering Thym's cross-petition, the bishop admits the contract, but denies that it was fully performed by Thym; he admits that certain "extras" were furnished by Thym, but denies that they were furnished in pursuance of any agreement between them, and puts in issue the reasonable value of the "extras" furnished. He also claims a payment of $100, for which he asks credit.

He also pleads several counterclaims, or what are desig-
nated as counterclaims, consisting of alleged overcharges,
damages for inferior material, and for failure to furnish
certain items required by the terms of the contract, aggre-
gating nearly $1,000. As between the plaintiff and the
defendant (the bishop) the court found in favor of the
plaintiff on all issues save as to the extra labor, all claims
therefor being disallowed. As between Thym and the
bishop, the court found in favor of Thym on all the issues
save as to the extras which were rejected. A decree was
entered for the foreclosure of each lien, subject to the
mortgage of the insurance company which the court held
was a first lien on the premises. The bishop appeals.

First, as to the controversy between the plaintiff and the
bishop. Several pages of the latter's brief are devoted to an
argument to justify the disallowance of the extras by the
trial court. While the argument has not served to con-
vince the plaintiff, it appears to have reconciled him
to the decree, for he now expresses his willingness to abide
by it; consequently, the plaintiff's claim for extras re-
quires no further attention. This brings us to the bishop's
contention that the work was not completed according to
the terms of the contract. This contention is grounded
on three propositions: (1) That two openings for stove-
pipes were not left in the flues; (2) that some brick work
was left unfinished; (3) that the debris had not been
removed from some of the flues, whereby they could not
be used.

As to the first, the evidence justifies a finding that the
openings were not provided for by the contract. As to the
second, the evidence shows that it was completed in a
couple of hours by a third party employed by the bishop.
The third was not discovered until sometime in the winter
following the date fixed for the completion of the contract.
The entire contention has the appearance of an after-
thought. No testimony was offered by the bishop tending
to show what it would have cost to complete the building
in the particulars mentioned, but the plaintiff testified

that it would not have cost $3. He also testified that on the 10th day of December, 1902, he asked the superintendent whether he was required to do anything further to complete the contract, and was informed that he was not, and that the work was in fact completed within the time fixed by the contract. On the same day the superintendent made out the final estimate of the work, and stated therein that $593 was the final amount due the plaintiff under the contract. Still later, in a letter published under the direction of the bishop, the reason given for his refusal to make final settlement was that a suit had been entered against the plaintiff by the widow of a laborer who had been killed on the building for damages, and that, in thus refusing, he was acting on the advice of counsel. In view of all the evidence, we think the court was amply justified in finding that there had been a substantial performance by the plaintiff of his part of the contract. That is all that is required, and the slight omissions, even if they exist, would not defeat a recovery. *Leeds v. Little*, 42 Minn. 144; *Woodward v. Fuller*, 80 N. Y. 312; *Heckmann v. Pinkney*, 81 N. Y. 211; *Crouch v. Gutmann*, 134 N. Y. 45, 30 Am. St. Rep. 608, and note.

It is also insisted that the plaintiff must fail in this action because he failed to furnish a certificate from the county clerk, showing that no liens had been filed against the property for labor performed for him. True, the contract provides for such certificate, but the evidence shows no such liens, nor is it claimed that any existed. The time for filing such liens had expired long before the suit was tried. It is a maxim of equity that it looks to the substance, rather than to the form. No substantial right of the bishop has been violated by the failure to furnish such certificate. It does not appear that he ever insisted upon it, but, as we have seen, based his refusal to settle on other grounds. No advantage could result to him by requiring the plaintiff to furnish the certificate, and to require it at this time would be to sacrifice the substance for the form, and to require what would be purely a work

of supererogation. We think the court very properly disregarded this part of the defense.

We come now to the bishop's counterclaims against the plaintiff. Two items thereof, aggregating $2,640, are for damages for failure to perform the work within the time fixed by the contract, and to keep ten bricklayers at work daily on the work. Without going into this claim, which is unreasonable on its face, it will suffice to say the evidence is ample to sustain a finding of a substantial completion of the work within the time fixed by the contract, and that, as we have seen, is sufficient. Another item is $360 for pipes, tanks, etc., required to furnish water used in doing the work. The bishop was to furnish the material, and water, it appears, falls within that category in this instance as the parties construed the contract before this controversy arose. As to the $500 item for damages sustained by the bishop by reason of the wrongful filing of plaintiff's lien, it is now tacitly conceded to be without merit, hence, it requires no further notice. The court awarded the plaintiff $593, with interest from October 18, 1902. This is exactly the amount the superintendent gave as the fixed estimate, and practically the same as that stated in the bishop's public letter hereinbefore mentioned. The decree as between the plaintiff and the bishop appears to be equitable, and the latter, at least, has no just ground to complain of it. After the decree was entered the plaintiff's claim was assigned to Robert J. Greene, and by order of the court he was substituted as plaintiff.

We come now to the controversy between Thym and the bishop. To understand this it should be stated that Thym operated a stone-cutting establishment in Kansas City under the trade name of Carthage Stone Yard. He also acted as agent for a corporation, known as Carthage Stone Company of Carthage, Missouri. The two establishments were wholly disconnected save as to Thym's agency for the corporation, but he was sole proprietor of the establishment in Kansas City. The corporation furnished rough stone; Thym furnished cut or dressed stone. Each

had a contract to furnish some of the material for the building in question, but they were separate and distinct, and were so recognized by all parties. The contract of the corporation was in the corporate name; Thym.'s was signed by him. The defenses urged against Thym's claim, for the most part, are based on transactions had between the bishop and said corporation and for which Thym is in no way liable. The evidence as to these matters is scattered through the entire record and it would be profitless to review it at length. For example, the alleged payment of $100 for which the bishop asks credit on Thym's account was made by a check, payable to the Carthage Stone Company, and bears its indorsement. The evidence shows that the bishop received credit therefor on the account of that corporation. Eliminating the evidence bearing solely on the bishop's transactions with the corporation, the controversy between him and Thym narrows down to a few items, which we shall proceed to notice. First, as to the counterclaims, which are narrowed down to these items: $13 for cutting down 26 caps; $30 for recutting large flue caps; $26 for not cutting water drips. As to the first two, the evidence is abundantly sufficient to sustain a finding against the bishop. As to the third, the contract called for the "water drips," and Thym furnished them, but they were not cut just as the plans called for. They were used, however, without change, and there is no evidence showing the extent the bishop was damaged, if at all, by this deviation from the plans. Consequently, a finding against him as to that item is the only finding thereon that could be sustained. The same may be said of all the items included in the counterclaims.

Thym's claim for "extras" was wholly disallowed. The bishop admits that one of the items thereof should have been allowed, namely, for 150 feet of "stone belt course." The reasonable value of this item according to the undisputed evidence is $90, and it should have been allowed. There is another item, namely, "stone platform in three pieces," which the bishop admits he received, but which he

claims was used for other purposes. The evidence is clear that this item was furnished by Thym outside the contract and was worth $16. It also should have been allowed. There is still another item, six stone caps for windows, that should have been allowed. These six windows were not included in the original plans and were ordered after the contract was made. The evidence satisfies us that these window caps were "extra," and shows that they were reasonably worth $42.60. As to the remaining items, it must suffice to say that the record justifies the trial court in rejecting them, but the three mentioned, aggregating $148.60, should be added to the amount found due Thym by the trial court. The trial court awarded him $823.32, with interest from December 29, 1904, the date of the decree. Thym contends that he is entitled to interest from six months after the date of the last item, which was furnished June 23, 1902. No date of payment is fixed by the contract, and he is entitled to interest for at least the time claimed, which would be from December 23, 1902. In short, Thym is entitled to recover of the bishop $965.92, with interest thereon from the 23d day of June, 1902, at the rate of 7 per cent. per annum.

There remains to be considered the question of the priority of the mortgage of the insurance company. The plaintiff's lien was filed December 16, and Thym's October 22, 1902. Each was filed within 60 days from the completion of the contract upon which it is based. Comp. St. 1901, ch. 54, art. I, sec. 2. Both liens therefore attached to the property before the mortgage, which was executed October 22, 1902, and filed for record the following day. *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb. 207. The decree of the district court, therefore, making their liens subordinate to that of the insurance company is erroneous.

It is therefore recommended that the cause be remanded to the district court, with directions to modify the decree in accordance with this opinion.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, this cause is remanded to the district court, with directions to modify the decree in accordance with this opinion.

REVERSED.

The following opinion on motion for rehearing was filed October 18, 1906. *Rehearing denied:*

ALBERT, C.

One matter discussed in the brief on rehearing is that no cross-appeal was taken. This is a mistake. The cross-appellant filed a brief in due season pointing out certain errors of which he complained. That is all that is required to perfect a cross-appeal. *Meade Plumbing, H. & L. Co. v. Irwin,* 77 Neb. 385. It is also pointed out that at one place in the opinion we inadvertently used the words June 23 instead of December 23, as the date from which interest should be computed on Thym's claim. While the error, owing to the context, could hardly be misleading, it should be corrected.

It is recommended that the error in the dates herein mentioned be corrected, and the motion overruled.

By the Court: For the reasons above stated, the decree is modified so as to allow interest from December 23, 1902, and the motion for rehearing is

OVERRULED.