JOHN M. MCGOWAN ET AL., APPELLEES, V. GATE CITY MALT COMPANY, APPELLEE; JAMES STEWART & COMPANY, APPELLANT.

FILED APRIL 8, 1911. No. 16,373.

1. **Mechanics' Liens: SUBSTANTIAL PERFORMANCE OF CONTRACT.** In a suit to foreclose a mechanic's lien for labor performed and material furnished in the construction of a building under contract, relief will not be denied the plaintiff because of omissions in the performance of the contract in details of the work, or time of completion, when there has been a substantial performance on his part; the defendant having his remedy in damages.

2. ——: ——. The contract between the contractor and subcontractor provided for the payment of 80 per cent. of the value of material delivered and in place monthly, as the work progressed, the remaining 20 per cent. to be paid "within 30 days after the completion and acceptance of this work," but did not specify by whom the acceptance was to be made. The contract being thus incomplete, it is *held* that a substantial compliance therewith in the matter of execution and surrender of the work and material to the contractor was sufficient to enable the subcontractor to maintain his action, without waiting for the completion of the structure by the contractor and its acceptance by the owner, but subject to any defense the contractor might have for damages on account of noncompliance with details.

3. **Contracts: BUILDING CONTRACT: EXTRAS.** The contract between the contractor and subcontractor provided that no work done or material furnished by the subcontractor should be considered as extra or paid for as such, unless a separate agreement in writing therefor should be made before the commencement of such work or furnishing of such material. The contractor was a nonresident of the state, having its principal places of business out of the state. The work was under the direction of superintendents in charge and upon the ground. Extras were ordered by them and furnished by the subcontractor without such written agreement, that clause of the contract being ignored. It is *held* that the absence of such written agreement cannot, under the circumstances, furnish the contractor a defense to the claim for such extras actually furnished.

4. ——: ——: CONSTRUCTION. *Held, also*, That the clause in the contract that no orders for extra work should be given "by employees upon the job" did not include superintendents in charge.

5. ———: ———: LIABILITY FOR MATERIAL. Where a contractor pur-
chases and furnishes material to a subcontractor, informing him
of the cost and the price that will be charged, the subcon-
tractor has his election, either to accept and use the material
or reject it. If he accepts and makes use of the material he will
be held liable for the price previously fixed by the contractor.

6. Appeal: EVIDENCE: SUFFICIENCY. Where a claim was made by a
subcontractor against the contractor for the *use* of scaffolding
material belonging to such subcontractor, and the evidence
showed that both parties had lumber of the kind upon the ground
and used the same to some extent without discrimination, no
sufficient proof of the quantity used nor value of such use being
made, the evidence in support of such claim *held* insufficient to
justify its allowance.

APPEAL from the district court for Douglas county:
LEE S. ESTELLE, JUDGE. *Judgment reduced.*

*S. N. Taylor, S. C. Taylor, H. A. Hamilton* and *W. H. Hatteroth,* for appellant.

*Mahoney & Kennedy* and *McGilton, Gaines & Smith,* contra.

REESE, C. J.

This is an action by plaintiffs, as subcontractors, against James Stewart & Company, as principal contract- ors, and the Gate City Malt Company, the owner, by which a judgment is sought against James Stewart & Company, contractors, and the foreclosure of a mechanic's lien on lot 6, in block 16, and lots 1, 2 and 3, in block 18, in the city of South Omaha, as against the owner of said property.

The pleadings are of great length and cannot be set out in detail here. It must be sufficient to say that it is alleged in the petition that the defendants James Stewart & Company entered into a contract with de- fendant Gate City Malt Company to furnish the material and construct buildings on the lots described above in the city of South Omaha, and subsequently, by a contract

with plaintiffs, sublet a portion thereof to them and by which plaintiffs were to furnish the material and do the brick and concrete work for the prices and upon the terms set out in said contract, all of which was done and performed by plaintiffs, amounting to the total sum of $31,923.49; that defendants had paid to plaintiffs thereon the sum of $25,524.70, and no more, and that there remained due and unpaid thereon the sum of $6,398.79, for which judgment was demanded as against James Stewart & Company, and for the foreclosure of the mechanic's lien as against the Gate City Malt Company. The contract with the items of account are set out in the petition as exhibits, but they need not be here stated.

The answer of defendants James Stewart & Company is of considerable length. By it the contract with plaintiffs is admitted, and, in substance, it is admitted that plaintiffs furnished material and labor thereunder, but by way of counterclaim it is alleged that plaintiffs so failed to comply with the contract as to result in serious loss and damage to defendants. Among the items presented by defendants are: Balance due on brick furnished to plaintiffs, $113.25; demurrage on cars plaintiffs failed to unload, $238; making connections of water pipes, $65. It is alleged that by the terms of the contract 80 per cent. in value of the labor and material furnished by plaintiffs was to be paid as the work progressed; the remaining 20 per cent. was to be withheld until the work was finished and accepted; that the 20 per cent. is included in plaintiffs' petition, but that the work has never been accepted; that there is nothing due plaintiffs until such acceptance, and therefore the suit is prematurely brought and cannot be maintained; that owing to the many violations of the provisions of the contract, both in the manner of doing the work and the failure to complete the structure within the time limited by the contract, plaintiffs having thereby failed in its performance, no action can be maintained thereon. The answer of the Gate City Malt Company is practically a general denial of the averments

of the petition and of any indebtedness to plaintiffs, it having no contractual relations with them. Plaintiffs' reply to this answer is a general denial.

Plaintiffs' reply to the answer of James Stewart & Company is to the effect that they had brick of their own purchase, sufficient to meet all demands as the work progressed, and the purchase of brick by defendants was therefore unnecessary, but to accommodate defendants plaintiffs had used them and allowed defendants the same price for which they had purchased brick for themselves; that defendants had purchased their brick at 50 cents a thousand more than plaintiffs had purchased their own brick, but that they had accepted defendants' brick at the same price for which they had purchased, to wit, $7 a thousand; that the demurrage charge was occasioned by the unnecessary purchase and shipment of brick in such large quantities by defendants that they could not be unloaded from the cars, the demurrage being caused by the unnecessary act of defendants, and plaintiffs were not liable therefor. It is alleged that the piping for water was done for defendants' own use and benefit, and not for or at the request of plaintiffs; that immediately upon the completion of the buildings the Gate City Malt Company, defendant, had taken possession thereof and has since occupied the same; that defendants are estopped to object to plaintiffs' work because all of said work was done under defendants' immediate supervision and direction. The cause was tried to the court, the result being a general finding in favor of plaintiffs. The amount found due, including interest, was $7,282.37, and an order of sale was directed to issue for the sale of the property in case of nonpayment. Defendants James Stewart & Company appeal.

Each party has furnished elaborate, able and extended briefs, and the cause was quite exhaustively argued at the bar of this court. The bill of exceptions is of great length, and consists largely of details which it is impossible for us to follow without extending this opinion

to an unnecessary and unreasonable length. Reversing, to some extent, the order of the presentation of the subjects by defendants in their brief, we notice the contention that plaintiffs' action cannot be maintained upon the contract until there is a performance of its conditions by them. This contention is, in a general way, correct. That one cannot maintain an action on a contract without a prior substantial compliance on his part is the well-settled law, but this principle must have a reasonable application. If there is a substantial performance the action thereon may be maintained, but without prejudice to any set-off or counterclaim which may be presented by the defendant in the action. This is a reasonable and just rule, and is the well-settled law of this state. *Hahn v. Bonacum,* 76 Neb. 837, and cases there cited; *Nebraska Plumbing Supply Co. v. Payne,* 84 Neb. 390; *Grove-Wharton Construction Co. v. Clarke,* 86 Neb. 831. There can be no doubt but there was at least a substantial compliance with the plaintiffs' contract on their part, and therefore the action can be maintained, but subject to damages, if any, which defendants may have suffered.

Defendants further contend that the decree of the district court should be reversed "because the contract between the parties provided that the final payment of 20 per cent. (of the contract price) should be made only after the approval and acceptance of the work by the supervising architect." The contract provides that the payments for the work are "to be made on or about the 20th of each month at the rate of 80 per cent. of the value of material delivered and in place during the preceding month, as determined by the contractor or the architect; and the remaining 20 per cent. within 30 days after the completion and acceptance of this work." It may be noted that the contract does not specify by whom the acceptance of the work is to be made, whether by the architect, the owner, or the contractor. We are inclined to the belief that as between the contractor and the subcontractor (and they are the only parties to this appeal)

the completion of the work and its surrender to the contractor would be a sufficient compliance with this provision, but subject to any damage he might sustain by failure to comply with details. However, we do not base our decision exclusively upon this. The clause is incomplete, and a compliance with the contract is all that can be required under it. We do not think that the language should be construed to mean that the subcontractor should be compelled to await the final completion of the whole building by the contractor and its acceptance by the architect or owner before the 20 per cent. would become due. Nor do we understand that defendants so contend. Such a construction would be wholly unreasonable. In neither of these contentions can we see any just, legal or equitable reason why plaintiffs should not be permitted to maintain this action for what is justly due them, even though there had been no formal acceptance. *Hahn v. Bonacum, supra.*

The bill of exceptions contains a great number of charges by plaintiffs for extras alleged to have been furnished and extra labor performed by plaintiffs. The contract provides, in substance, that no work done or material furnished by the subcontractor shall be considered as extra or paid for as extra, unless a separate agreement in writing therefor shall have been made before the commencement of such work or the furnishing of such material. It is also stipulated therein "that no orders for work supposed to be 'extra' shall be given by employees upon the job or recognized as extra by the contractor." The contractors have their places of business in Chicago, Illinois, and other cities, and were represented in South Omaha upon the construction work by agents known as superintendents. It is shown by the evidence that many changes and extras were ordered by them, the orders complied with, and the extras in the way of labor and material furnished as required. Of all such extras so provided by plaintiffs we have not observed a single case where the orders were given or the material or labor

furnished under a separate agreement in writing as required by the contract. In *Campbell v. Kimball,* 87 Neb. 309, we held under somewhat similar conditions that, if this provision of the contract was ignored by the parties to it and the extras were ordered and furnished, the terms of the contract would furnish no defense to the claim for such extras. See, also, *Jobst v. Hayden Bros.,* 84 Neb. 735. Any other rule would be against conscience and would often work serious injustice. The contract between plaintiffs and defendants is signed "James Stewart & Company, by W. R. Sinks," and defendants are alleged to be a partnership. Their line of business as contractors extends over many states of the Union, and judging by their literature their places of business are in Chicago, New York, Pittsburgh and New Orleans, and therefore they necessarily transact their business and superintend their contracts by agents located at the points where their work is being done. The superintendents when placed in control of their construction work must be considered as representing the company, and are not "employees upon the job" in the sense as used in the contract. While in charge of the construction of a particular building, they are to all intents and purposes the company, and the line of conduct pursued by them in the way of giving directions will be as binding upon the company as if adopted by a member or general managing agent. The contention therefore that no recovery can be had for extras if furnished under the circumstances named cannot be sustained.

In addition to the great number of demands by plaintiffs, the defendants present a number of counter charges for material, damages for failure to comply with the contract, labor furnished plaintiffs, etc. On many, if not all, of these issues the evidence is conflicting and contradictory. Considering the great length of the bill of exceptions and these issues as presented, all of which have been examined and carefully read, the findings of the district court, in so far as they are approved, will not be

McGowan v. Gate City Malt Co.

specifically noticed. The claims presented by plaintiffs were practically all allowed by that court, and its findings in that behalf will not be molested, except as hereinafter stated.

It appears from the evidence that defendants furnished to plaintiffs some 223,000 bricks to be used in the construction work. Judging by the correspondence shown in the record, defendants believed plaintiffs were not receiving, of the bricks ordered by them, a sufficient number to push the work as it ought to have been crowded, when, apparently without any request by them, the bricks were purchased by defendants, shipped and delivered to plaintiffs, and used by them. Invoices were furnished plaintiffs by defendants, together with checks payable to the person from whom the purchase had been made, with instructions that if found correct plaintiffs should transmit the checks to the seller, which was done. For those bricks defendants paid $7.50 a' thousand. The bricks which plaintiffs had contracted for were to be furnished them at the rate of $7 a thousand. The evidence is clear that plaintiffs were advised of the price which defendants were paying, and that they refused to allow the 50 cents a thousand above the price they were paying. Had plaintiffs refused to accept and use the bricks furnished by defendants, they could not have been required to pay any portion of the price for which the bricks were purchased by defendants. But having been informed what the cost would be, and still accepting and using them, they ought in all good conscience to have given defendants credit for the price paid, instead of for the price at which they had contracted with those from whom they were purchasing. The difference is 50 cents a thousand or $111.50, for which defendants are entitled to credit. As to other items of counterclaim presented by defendants, we can see no sufficient reason for reversing the findings of the district court, but will not discuss them separately here.

A claim is made against defendants for $300 for the

use of plaintiffs' scaffolding lumber by defendants, and which was allowed by the trial court. This claim is for the *use* of the lumber referred to, and of which some portion was broken and otherwise destroyed. Upon this part of the case the evidence is far from satisfactory. There is little, if any, doubt that in the construction of the immense building under contract the lumber of the parties became to some extent intermingled, and not much care was taken by either one to observe as to the ownership of their material of the class under consideration. Each had a large quantity on the premises. It was largely of inferior grade and value, so rendered by the use to which it was being applied. The evidence bearing upon the quantity used is largely, if not entirely, guesswork and estimates upon a very uncertain basis, and by some of the witnesses it is said there was no appreciable difference between the lumber used by each, belonging to the other. It is probable that to some extent the plaintiffs may have been the loser in this use, but there seems to be no way of even approximating the actual amount, if such loss has been sustained, and we are persuaded that this part of the demand has not been sufficiently proved.

Much time and attention upon the trial were devoted to a clause in the contract forbidding the erection of a hoist within the building, and which was violated by plaintiffs, and their hoist for lifting material was placed therein. This seems to have been necessary, owing to the contour and topography of the site upon which the building was erected. However, we fail to find any sufficient proof that defendants were in any way injured or damaged thereby, and the subject will not be further noticed.

As the decree of the district court was for $411.50 more than we find plaintiffs entitled to, the cause will be remanded to that court, with directions to enter a decree in all respects similar to the one heretofore rendered except that the amount thereof shall be for $6,870.87, instead of $7,282.37, the same to bear interest from the

date fixed in the original decree, to wit, April 19, 1909, at the rate of 7 per cent. per annum.

JUDGMENT REDUCED.

FAWCETT, J., not sitting.