[No. 5273-3-II.   Division Two.   May 18, 1983.]

LESLIE D. DEAN, ET AL, *Appellants,* v. BURTON M. GREGG, *Respondent.*

<hr>

*Hugh Knapp,* for appellants.

*Hugh Potter,* for respondent.

PETRIE, J.—Plaintiffs, Leslie D. Dean and Jose M. Dean, purchasers of realty under a real estate purchase and sale agreement with defendant, Burton M. Gregg, seller, appeal a judgment awarding them monetary damages for seller's breach of the contract but denying them specific performance of that contract. We reverse and direct specific performance in the manner set forth herein.

The trial court's unchallenged findings of fact adequately describe the nature of the controversy. In June 1979 the parties executed a contract for the purchase and sale of a portion of lot 64 of a previously recorded plat. The land in question, identified by courses and distances from a fixed point, was designated as lot 4 of a proposed short plat of said lot 64 which Dr. Gregg had presented to appropriate county officials and for which he had received conditional, preliminary approval. The contract provided, "This sale subject to property being short platted into 4 parcels," and also provided, "If either party defaults (that is, fails to perform the acts required of him) in his contractual performance herein, the non–defaulting party may seek specific performance pursuant to the terms of this agreement, damages, or rescission."

On the date set for closing, plaintiffs were ready, willing and able to pay the purchase price in cash, and they signed all documents requiring their signatures. Defendant performed most of the acts required of him preparatory to performing his obligations under the contract. However, his costs to complete the platting procedure increased beyond his expectations. In anticipation of those costs exceeding the amount to be realized on the sale of lot 4 of the plat, he arranged for a line of credit of $25,000.[1] Nevertheless, those costs exceeded the net sale expectation by $33,175.86.

---

[1] He also testified that he had $4,000 available to assist financing the short plat.

In his words, when "costs started mounting up, I was becoming more and more concerned about the advisability of cutting this property up for what seemed to be a minimal economic return." As a result he asked his broker to contact the Deans to see if they would purchase lot 3 of the same proposed short plat with a down payment of $15,000. They refused, and Dr. Gregg testified, "I elected not to proceed."

The trial court expressly found that, "The short plat probably could have been completed in December 1979," had Dr. Gregg acquired legal title from his vendors and release of a bank lien. Indeed, the record indicates that he had substantially complied with the conditions imposed by the preliminary approval so that, upon presentation of the appropriate documents signed by him as owner, final approval would have been a ministerial act.

By the time trial was held, however, the preliminary approval had lapsed. The trial court, though finding the breach, nevertheless denied specific performance because of (1) Dr. Gregg's financial inability to complete the transaction (despite the finding that the fair market value of the remainder of the proposed plat was in excess of $135,000), and (2) the court's lack of authority to order final approval of the short plat.

This court finds Dr. Gregg's failure to complete this sale a most flagrant breach of contract. Indeed, we find defendant's excuse for nonperformance so woefully deficient that justice demands reversal in this case. By his own testimony Dr. Gregg simply concluded that he had entered into a bad bargain. In the absence of fraud (and none is charged in this case), that is not a sufficient reason to deny specific performance. The facts in the case at bench are sufficiently similar to those in *Egbert v. Way,* 15 Wn. App. 76, 546 P.2d 1246 (1976) and *Hudesman v. Foley,* 4 Wn. App. 230, 480 P.2d 534 (1971) to warrant reversal.

The only complication is the fact that at this late date Dr. Gregg will be required to refile his application for approval of the short plat. We direct that he do so, and

that he pursue it in good faith under the supervision of the Superior Court for Clark County. In the event the County, despite Dr. Gregg's good faith efforts, should for any reason fail to grant final approval of the short plat after a reasonable time, the court is directed to require Dr. Gregg to convey the property, together with the easement specified in the contract, by courses and distances set forth in the contract.[2]

It is so ordered.

WORSWICK, A.C.J., and REED, J., concur.

Reconsideration denied June 7, 1983.

---

[2]A short subdivision is not subject to the restraints imposed by RCW 58.17-.200 and .320. A short subdivision "shall comply with the provisions of any local regulation adopted pursuant to RCW 58.17.060." RCW 58.17.030. We note that section 17.03.020(H) of Clark County Land Division Ordinance presently in effect, which will govern Dr. Gregg's renewed effort to obtain short plat approval, specifically exempts "Divisions of land made by Court Order" provided that the division complies "with all the provisions of Title 18, Clark County Code."