JOHN R. MOHRLANG, APPELLEE AND CROSS-APPELLANT, V. LARRY DRAPER, APPELLANT AND CROSS-APPELLEE, AND JUDY DRAPER, APPELLEE.

365 N.W.2d 443

Filed April 5, 1985.   No. 83-952.

Conway and Connolly, P.C., for appellant.

Gene C. Foote II and Dale A Norris of Whelan, Foote & Scherr, P.C., for appellee Mohrlang.

BOSLAUGH, WHITE, SHANAHAN, and GRANT, JJ., and HOWARD, D.J.

SHANAHAN, J.

Larry Draper appeals a money judgment awarded by the district court for Adams County in an action brought by John R. Mohrlang for specific performance of a contract for the sale of real estate. Mohrlang cross-appeals the district court's denial of specific performance. We reverse and remand with directions.

On June 8, 1981, in a written offer, a "Purchase Agreement" prepared by his realtor, Mohrlang offered to purchase an unimproved tract owned by Draper, a lot in a proposed subdivision to be known as "Draper Subdivision." The purchase agreement specified a purchase price of $14,875, namely, $500 earnest money paid by Mohrlang when he signed the purchase agreement, $2,475 payable at "closing" on January 1, 1982, and the balance of the purchase price, $11,900, payable in monthly installments of $131.14 per month based on a 20-year schedule, with a "balloon" payment in 5 years and interest at the rate of 12 percent per annum on the unpaid purchase price.

The purchase agreement also contained the following provisions: Draper was required to obtain the release of a "right-of-way" easement across the lot and termination of a buried gasline belonging to Kansas-Nebraska Natural Gas Company, Inc., and Draper would bear the cost of relocating the gas company's line and paving a street abutting the lot to be purchased.

On June 9 Draper signed his written acceptance of Mohrlang's offer submitted and contained in the purchase agreement of June 8. Mohrlang hired an architectural firm and embarked upon plans for a solar home requiring the southern exposure available on the Draper lot.

The gas company's line was located in an easement 33 feet wide which diagonally crossed the subject lot for approximately 200 feet. After visiting with personnel of the gas company, Draper, by an estimate of cost prepared by the gas company on July 7, was informed that the cost of relocating the gasline would be $10,050. Continued location of the gasline rendered the lot unusable for the residential construction intended by Mohrlang.

Mohrlang had obtained finances to complete the purchase, but the gasline was not moved and the abutting street was not paved. Although his realtor had numerous contacts with Draper about a closing, Mohrlang was unsuccessful in scheduling a closing notwithstanding Draper's failure to provide paving on the street adjacent to the subject lot and relocate the gasline. Draper offered, but Mohrlang refused, another lot as a substitute for the agreed lot.

Mohrlang filed a petition on July 29, 1982, and requested specific performance of his agreement with Draper for sale of the lot in question. In his answer Draper alleged that he had attempted to relocate the gasline, but had neither the power nor means to obtain such relocation. Further, Draper alleged that Mohrlang had an adequate remedy at law.

At trial Mohrlang testified that, although other real estate had been investigated, no other lot had the particular features and adaptability found in the Draper lot sought to be purchased by Mohrlang. A representative of the gas company testified that the gasline could have been moved at a cost of $10,050, as indicated in the gas company estimate prepared for Draper. Draper did not present any evidence of his inability preventing performance of the Mohrlang contract and never described any hardship to be suffered if he were required to perform the contract.

The district court found that Mohrlang had offered to perform his contract with Draper; that Mohrlang was "ready, willing and able to perform" such contract; but that "ordering of specific performance of the contract by the Court would work an undue hardship" on Draper. Instead of specific performance, the district court awarded damages to Mohrlang.

As the assignment of error in his appeal, Draper claims the district court "erred in awarding [Mohrlang] monetary damages," because Mohrlang had not mentioned or requested damages in his petition. In his cross-appeal Mohrlang contends that the district court should have granted specific performance of the Mohrlang-Draper contract for the sale of real estate.

Because the questions to be reviewed have arisen from an action in equity for specific performance of a written contract for the sale of real estate, and as with any equity action, we

review this matter de novo on the record. See *Litz v. Wilson*, 208 Neb. 483, 304 N.W.2d 48 (1981). An action for specific performance is governed by the elements, conditions, and incidents which control the administration of all equitable remedies. See *Bauer v. Bauer*, 136 Neb. 329, 285 N.W. 565 (1939).

When land or any interest therein is the subject matter of a contract, the power of a court of equity to grant specific performance is beyond question. *Russell v. Western Nebraska Rest Home, Inc.*, 180 Neb. 728, 144 N.W.2d 728 (1966). We have held that specific performance should generally be granted as a matter of course or right regarding a contract for the sale of real estate where a valid, binding contract exists which is definite and certain in its terms, mutual in its obligation, free from overreaching fraud and unfairness, and where the remedy at law is inadequate. *Reese v. Hatfield*, 201 Neb. 540, 270 N.W.2d 898 (1978). Real estate is assumed to possess the characteristic of uniqueness, and, therefore, special value, necessary for availability of specific performance. See *Moser v. Thorp Sales Corp.*, 256 N.W.2d 900 (Iowa 1977). This assumption is based upon the status of land as the favorite and favored subject in England and all countries of Anglo-Saxon origin. See 81 C.J.S. *Specific Performance* § 76 (1977). In an action for specific performance of a contract to sell real estate, generally, it is no defense that there is other available land as good as or even better than the land which is the subject of the contract to be performed. See *Shreeve v. Greer*, 65 Ariz. 35, 173 P.2d 641 (1946).

Exoneration from specific performance may be available when specific performance would be inequitable or unjust due to hardship on the one from whom performance is sought. Whether a contract is fair, and, therefore, subject to equitable enforcement, is determined by the circumstances existing when the contract is entered rather than by subsequent events intervening before specific performance is sought. See *Shell Oil Co. v. Kapler*, 235 Minn. 292, 50 N.W.2d 707 (1951).

Although *Wilson & Co., Inc. v. Fremont Cake & Meal Co.*, 153 Neb. 160, 43 N.W.2d 657 (1950), was an action at law for damages due to a breach of contract, the principles stated in

*Wilson* regarding excuse for nonperformance—impossibility in a law action vis-a-vis hardship in an equitable action—are applicable in the present case:

"Inconvenience or the cost of compliance, though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful. Parties sui juris bind themselves by their lawful contracts, and courts cannot alter them because they work a hardship. . . . A contract is not invalid, nor is the obligor therein in any manner discharged from its binding effect, because it turns out to be difficult or burdensome to perform. It has been said that difficulties, even if unforeseen and however great, are no excuse, and that the fact that a contract has become more burdensome in its operation than was anticipated is not ground for its rescission." . . .

". . . A contract which is possible of performance when made does not become invalid or unenforceable because conditions afterwards arise which render performance impossible. * * * If a party by his own contract creates a duty or imposes a charge on himself, he must under any and all conditions substantially comply with the undertaking."

*Id.* at 177, 43 N.W.2d at 666-67.

One form of hardship equitably excusing specific performance of a contract may be a circumstance unforeseeable at entry into the contract. Hardship of such nature, however, cannot be self-inflicted or caused through inexcusable neglect on the part of the person seeking to be excused or exonerated from specific performance. See *Derwell Company v. Apic, Inc.*, 278 A.2d 338 (Del. Ch. 1971). See, also, *Craft Builders, Inc. v. Ellis D. Taylor, Inc.*, 254 A.2d 233 (Del. 1969). Were the rule otherwise, one would derive a benefit from his or her own inexcusable neglect.

Draper entered the contract on June 9 and through the gas company's estimate of July 7 learned about the cost of relocating the gasline. The inescapable inference is that complete information about relocating the gasline was

available when Draper entered the contract to sell his lot. The contract expressly required that Draper bear the cost of relocating the gasline, as well as paving the street. Although the exact extent of expense for relocating the gasline was apparently unknown to Draper when he entered the agreement, relocating the gasline was a burden undertaken by Draper when the parties made their contract. Draper's belated realization that his financial burden under the contract was greater than initially anticipated at origination of the agreement does not constitute hardship excusing specific performance of his contract with Mohrlang. An imprudent or bad bargain in and of itself is not an excuse for nonperformance of a contract. See *Dean v. Gregg*, 34 Wash. App. 684, 663 P.2d 502 (1983). See, also, *Craft Builders, Inc. v. Ellis D. Taylor, Inc., supra.* It was Draper's neglect which increased his burden, not an unforeseeable circumstance.

Because there is no hardship equitably excusing Draper from specific performance of the contract in question, we reverse and set aside the judgment of the district court and remand this matter to the district court with directions to order specific performance of the Mohrlang-Draper contract in accordance with the provisions contained in the written agreement of the parties.

REVERSED AND REMANDED WITH DIRECTIONS.