WILLIE PODESTA YOUNG, APPELLEE, V. WILLIAM TATE, APPELLANT.

442 N.W.2d 865

Filed July 21, 1989.   No. 87-882.

John W. Wynkoop for appellant.

Norman F. Bradshaw for appellee.

HASTINGS, C.J., BOSLAUGH, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

HASTINGS, C.J.

Willie Podesta Young brought an action on a contract for money damages against William Tate. Tate counterclaimed against Young on this same contract. Tate appeals from a judgment in favor of Young on her petition for $25,000 and from a judgment against him on his counterclaim for $25,000 against Young. We affirm in part and in part reverse and remand with directions.

In the latter part of 1984, Young and Tate became interested in and began to discuss investing in a resort development in Illinois to be known as Eagle Creek Resort. They agreed to invest $50,000 for the first stage of development for Eagle Creek Resort, which consisted of putting together a bid to be made to the State of Illinois. Because Young had credit available to her which Tate did not have, the original agreement was for Young to put up the entire $50,000, with Tate agreeing to be responsible for repaying the first $25,000.

As evidence of this agreement, the parties signed a written contract which is set out as follows:

This agreement is between Willie Podesta Young (WPY) and William Tate (WT).

WPY will provide $50,000 for the first stages of development for the Eagle Creek Resort.

WT will assume the liability for the first $25,000. WPY will provide the above mentioned $25,000 on January 2, 1985. The check for $25,000 should be made out to Eagle Creek Resort, LTD.

The next $25,000 will be provided by WPY as needed. A five day notice will be given to WPY before the second draw is needed.

WPY will receive 25% ownership in Eagle Creek Resort, LTD.

/s/ Willie Podesta Young
Willie Podesta Young
/s/ William L. Tate
William Tate

It is agreed that if Eagle Creek Resort shall fail to repay WPY in accord with the terms of the Promissory Note from Eagle Creek Resort to WPY then W.T. shall pay to WPY the sum of $25,000. /s/ WPY /s/ WmT

. . . .

SUBSCRIBED and sworn to before me this 2nd day of January 1985.

/s/ Irene M Mahoney
Notary Public

The provision beneath the signatures, which is initialed by both parties, was added by the attorney advising Young.

Young paid the first $25,000 on January 2, 1985. On or about February 20, 1985, Tom Schuessler, who apparently was the person responsible for the early development stages, requested that Young pay the second $25,000. She refused to do so because she began to have doubts about the project and was unsatisfied with the accounting of money spent to date, which had been given to her. Thereafter, Tate began paying the bills for further development, paying, in all, $32,000. Tate learned in December 1985 that the project had failed and the State of Illinois had awarded the contract to someone else.

Young demanded that Tate pay back her $25,000, since under

the contract he agreed to be liable for the first $25,000. Tate refused to pay. Young sued Tate for the $25,000 she had paid, and Tate counterclaimed for $25,000 of the $32,000 he spent after Young refused to pay the second $25,000.

As noted by this court in *Artex, Inc. v. Omaha Edible Oils, Inc.*, 231 Neb. 281, 436 N.W.2d 146 (1989), a written contract which is expressed in clear and unambiguous language is not subject to interpretation or construction. The meaning of an unambiguous contract presents questions of law. It is axiomatic that on appeal, this court reaches its own independent conclusions on questions of law. See *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988).

The contract in this instance is completely unambiguous. Young was to pay $50,000 in two installments, and Tate was to be responsible to her to repay the first $25,000. There was no satisfaction clause in this contract, and therefore there was no requirement that Young must be honestly satisfied with the progress of the project before she completed her part of the performance agreed to in the contract. *Artex, Inc., supra.*

The contract is silent on the issue of Young's right to request an accounting of how the money was spent. It is equally silent regarding Young's ability to refuse to pay the second $25,000 in the event she is not satisfied with how the first $25,000 was spent. Therefore, Young's obligation to pay the second $25,000 was not discharged because she was dissatisfied with the project.

Young also claims that her obligation to pay the second $25,000 was discharged due to a supervening event that rendered performance impractical.

Where, after a contract is made, a party's principal purpose is substantially frustrated without his or her fault by the occurrence of an event, the nonoccurrence of which was a basic assumption on which the contract was made, his or her remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary. *Cleasby v. Leo A. Daly Co.*, 221 Neb. 254, 376 N.W.2d 312 (1985).

Young argues that the purpose of the contract was to successfully bid on development of the resort in Illinois.

According to her, this purpose was substantially frustrated after her meeting with Illinois officials on February 14, 1985, because she "returned from this meeting with serious reservations concerning the viability of the project," "believing that further expenditure of funds would be fruitless." Brief for appellee at 9.

The contract says nothing about any requirement that a *successful* bid be made. It is common sense that the possibility of not being the successful bidder had to be within the contemplation of the parties when the agreement was consummated. Whatever Young was told by the Illinois officials, which is not clear from the record, the purpose of the contract was not at that time substantially frustrated thereby discharging Young from her obligation to pay the second $25,000 when it was requested. As this court said in *Mohrlang v. Draper*, 219 Neb. 630, 635, 365 N.W.2d 443, 447 (1985), "An imprudent or bad bargain in and of itself is not an excuse for nonperformance of a contract."

Nevertheless, Young did pay the first $25,000, thereby substantially benefiting Tate, who was without money to invest at that time, and Tate did agree to be liable for the first $25,000. In *Peters v. Halligan*, 182 Neb. 51, 152 N.W.2d 103 (1967), this court stated:

> The general rule is that in spite of lack of substantial performance, where there has been a part performance and it has been of substantial benefit to the other party and he has accepted and retained the benefits thereof, he should not be permitted entirely to avoid the duties assumed by him under his contract, and, under such circumstances, the party partially performing is entitled to recover the reasonable or fair value of such performance, subject to the reciprocal right of the other party to recoup such damages as he has suffered from the failure of the plaintiff to perform fully or substantially his contract.

*Id.* at 58-59, 152 N.W.2d at 109. The court later explained that, generally, the rule that a party who fails fully to perform his or her contract cannot recover on the contract for part performance applies only to entire, indivisible contracts, not to severable contracts. There may be a recovery on the contract

for a part performance of a divisible contract. *Peters v. Halligan, supra.*

Given that the $50,000 was to be paid in two installments of $25,000, it can be said that the agreement between the parties was a divisible contract. Following the rule of *Peters v. Halligan, supra,* Young was entitled to the return of her first $25,000 guaranteed by Tate, and to that extent, the judgment of the district court is affirmed. However, by the same token, Tate paid the second $25,000, which was the responsibility of Young, and therefore Tate is entitled to recover from Young on his counterclaim the sum of $25,000.

Accordingly, the judgment of the district court finding against Tate on his counterclaim is reversed, and the cause is remanded with directions to enter judgment in favor of Tate in the amount of $25,000 on his counterclaim.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

CAPORALE, J., not participating.