GRAPHIC RESOURCES, INC., APPELLEE, v. BRUCE E. THIEBAUTH, APPELLEE, AND RICHARD C. KEKEISEN, INTERVENOR-APPELLANT.
447 N.W.2d 28

Filed October 20, 1989.   No. 88-179.

Mark J. Daly, of Nelson & Harding, for intervenor-appellant.

Frederick D. Stehlik, of Stehlik & Associates, for appellee Graphic Resources.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from an order of the district court for Douglas County granting Graphic Resources, Inc.'s, motion for summary judgment on Richard C. Kekeisen's petition to intervene in a replevin action.

This case began as an action in replevin brought by Graphic against Bruce E. Thiebauth to recover video equipment in Thiebauth's possession valued at $48,416. Kekeisen filed a petition to intervene, claiming a security interest in the equipment. On January 8, 1988, the court sustained Graphic's motion for summary judgment against the intervenor, Kekeisen, and dismissed the petition to intervene in the case. Kekeisen's motion for a new trial was denied, and he timely appealed, assigning seven errors, which may be summarized in Kekeisen's allegation that the trial court erred in finding that the word "additions" in Kekeisen's security agreement did not include after-acquired equipment as a matter of law. We affirm.

The record shows that on July 20, 1984, Kekeisen loaned $30,000 to Aircraft Video Marketing, Inc., and entered into a security agreement with Aircraft Video to cover items of equipment owned by Aircraft Video as of that date. Kekeisen later filed a financing statement perfecting his interest in the video equipment. The collateral was listed in the security agreement as follows: "All of Debtor's equipment, including replacement parts, additions, repairs, and accessories incorporated therein or affixed thereto. Without limitation the term 'equipment' includes all items used in recording, processing, playing back, or broadcasting moving or still pictures, by whatever process."

Additional video equipment was apparently purchased by Aircraft Video after the execution of the security agreement with Kekeisen. Kekeisen sums up the facts as follows: "In early 1985, Aircraft Video Marketing purchased the additional video equipment which is the subject of dispute in the instant action, for use with the existing video equipment in its business." Brief for appellant at 6. Graphic's petition in replevin listed specific equipment, and there is no argument but that the property listed in the petition was purchased by Aircraft Video after the execution of Kekeisen's security agreement.

On May 17, 1985, Graphic entered into a purchase agreement with Aircraft Video to purchase all of the assets of Aircraft Video with funds procured through a loan from First National Bank of Omaha. As security for the loan, First National took a security interest in all of Aircraft Video's assets, including all property "now owned or hereafter acquired" by Aircraft Video.

Use of after-acquired property clauses in security agreements are expressly allowed by Neb. U.C.C. § 9-204 (Reissue 1980). The only limitation on their use with which we are presently concerned relates to the sufficiency of the description of collateral. Neb. U.C.C. § 9-110 (Reissue 1980) provides, "For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

The term "additions," as it is used in the security agreement, does not sufficiently describe in legal or lay terms the equipment acquired by Aircraft Video after the execution of the security agreement. "Addition" is defined in Black's Law Dictionary 35 (5th ed. 1979) as an "[e]xtension; increase; augmentation." This definition in no way contemplates that "additions" is sufficient to reasonably identify the after-acquired collateral.

Furthermore, considering the context in which "additions" is used in Kekeisen's security agreement, no reasonable interpretation could lead us to conclude that after-acquired property was intended as its meaning. "The words used in the contract must be given their plain and ordinary meaning, as ordinary, average, or reasonable persons would understand them." *Bedrosky v. Hiner*, 230 Neb. 200, 206, 430 N.W.2d 535, 540 (1988). "Additions" is not set out distinctly, but is listed among the words "replacement parts . . . repairs, and accessories," and, in its ordinary sense, clearly and unambiguously refers to items like replacement parts, repairs, and accessories, which can be incorporated in or affixed to the existing equipment. A written contract is not subject to interpretation or construction if it is expressed in clear and unambiguous language. *Young v. Tate*, 232 Neb. 915, 442 N.W.2d 865 (1989).

Had the parties chosen to do so, they could have easily included language clearly stating that after-acquired equipment would be included in the security agreement. While a description need not refer to the items of collateral with specificity, the description must, at a minimum, reasonably identify the after-acquired collateral. § 9-110. The security agreement presently before us contains no such language.

> It [summary judgment] is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts, and when the moving party is entitled to judgment as a matter of law.

*International Harvester Credit Corp. v. Lech*, 231 Neb. 798, 801, 438 N.W.2d 474, 477 (1989). Kekeisen's assignment of error is without merit because there was no genuine issue as to any material fact, and Graphic was entitled to judgment as a matter of law. The decision of the trial court is affirmed.

AFFIRMED.